**Gilbert COX, Appellant,**

v.

**PENNSYLVANIA RAILROAD COMPANY, a body corporate, Appellee.**

**No. 1731.**

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 4, 1956.

Decided Feb. 10, 1956.

Samuel Intrater, Washington, D. C., with whom Albert Brick, Washington, D. C., was on the brief, for appellant.

Paul F. McArdle, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

In an action for personal injuries appellant obtained a verdict for $7,500 against appellee railroad company. On motion the trial court set aside the verdict and directed entry of judgment in favor of the railroad company. The trial court based its action on the ground that appellant as a matter of law was contributorily negligent. This appeal questions the correctness of such action.

Appellant, who was plant superintendent of a scrap iron dealer, testified that some bundles of tin belonging to his employer had fallen over a retaining wall onto the railroad yard; that he called the railroad and obtained permission to take a crane and truck into the yard to remove the bundles; that in order to do so it was necessary to cross certain railroad tracks and the railroad promised the tracks would be blocked while he was there; that he drove the truck into the yard and a fellow employee drove the crane; that he took one truckload out and when he was returning for a second load the truck stalled on one of the tracks; that for about two minutes he tried unsuccessfully to start the truck; that he suddenly saw a train approaching on the track; that he had heard no horn or bell, and when he first saw the train it was about 300 yards away and was traveling at a speed of 25 or 30 miles an hour; and that he was still in the truck when it was struck by the train, and he was injured.

With respect to what efforts he made to get out of the truck before the collision, appellant on direct examination testified:

"Q. What did you do when you saw the train coming? A. What did I do when I saw the train coming? I—I tried to get—get out the truck, and I saw that I wasn't able to get out the

truck. Then the first thing come to my mind that if I did—was able to get on the ground, when the engine struck the truck it would throw the truck on top of me. I wrapped my arm around the steering wheel,—in between the spokes of the steering wheel and the round ring, I wrapped my arm and held on.

"Q. After you saw the train did you still make any attempt to get it started, or did you just take these steps for your safety? A. I was trying to start it then, and then when I saw the train and I knew I couldn't get it started to get out of the way; I knew I couldn't get on the ground because I was afraid if I got on the ground that it would hit—hit the truck and turn it over on top of me."

On cross-examination appellant's testimony was:

"Q. Now would you please, Mr. Cox, tell the Court and jury what actions you took in so far as attempting to get out of the truck after you saw the engine? A. Well, on the beginning—on the beginning when I looked and saw the engine, the engine was too close on me—in my opinion, the way I was looking at it, the engine was too close for me to try to get out of the truck, because I felt—to myself I felt if I tried to get out of the truck and got on the ground, that the engine would strike the truck and turn the truck over on me and mash me.

"Q. That was when the engine was three hundred yards away, you thought it was too close for you to get out safely? A. Safely at the rate of speed he was traveling."

Upon such testimony the trial court reasoned:

"His own testimony clearly reveals that he drove his truck on an active (runner) track and stalled the engine for 1–2 minutes and then, upon seeing the defendant's engine pulling 26 freight cars coming towards him 300 yards (900 feet) away at 30 miles per hour, he did nothing in the exercise of reasonable care for his own safety but to try again to start his stalled engine and to wrap his arm around the steering wheel. By mere mathematical timing, plaintiff had better than 20 seconds to leap out of his truck cab and reach a safe distance from the collision. * * * He had ample time to leave the truck cab and his election to stay was itself evidence of negligence on his part which he cannot now avoid by claiming a sudden emergency."

It is settled in this jurisdiction that: "Only in exceptional cases will questions of negligence, contributory negligence and proximate cause pass from the realm of fact to one of law. Unless the evidence is so clear and undisputed that fair-minded men can draw only one conclusion, the questions are factual and not legal." Shu v. Basinger, D.C.Mun.App., 57 A.2d 295. Even if the facts are undisputed contributory negligence is still an ultimate fact for the jury if reasonable men may draw different conclusions from such facts. Wright v. Capital Transit Co., D.C.Mun.App., 35 A.2d 183.

It is also settled "that in a moment of unexpected emergency and imminent danger, a person is not held to the use of the best possible judgment, or a high degree of prudence that one may be assumed to exercise in an interval of calm, when there is opportunity and time for reflection and deliberation. * * * The law makes allowances for the fact that when confronted with a sudden emergency and an immediate peril, some people do not think rapidly or clearly, and failure to do so, does not constitute negligence as a matter of law." Baltimore & O. R. Co. v. Postom, 85 U.S.App.D.C. 207, 210, 177 F.2d 53, 56.

Guided by the foregoing principles, we hold it was error for the trial court to rule as a matter of law that appellant was contributorily negligent, because we are convinced that reasonable men could differ on the question whether appellant, under

the circumstances in which he found himself, acted with reasonable prudence.

■ Another matter requires our consideration. The motion for judgment notwithstanding the verdict sought in the alternative a new trial. After granting the motion for judgment the trial court considered the alternative motion and ordered a new trial in the event the ruling on the motion for judgment should be held erroneous on appeal. This procedure was proper.[1] We have jurisdiction to review the action of the trial court on both motions,[2] and appellant asks us to hold that the grant of the new trial was an abuse of discretion.

■ The trial court granted the new trial on the ground that the verdict was excessive. A trial court not only has the power but it also has the duty to set aside a verdict which it is convinced is grossly excessive, and the question of excessiveness is committed almost entirely to the discretion of the trial court.[3] In its memorandum opinion the trial court stated at length its reasons for holding the evidence of damage insufficient to support the verdict. We find nothing arbitrary in its ruling.

The judgment is reversed and the case remanded for a new trial pursuant to the order of the trial court.

1. Crusade v. Capital Transit Co., D.C. Mun.App., 63 A.2d 878, 8 A.L.R.2d 229.

2. Peters v. Smith, 3 Cir., 221 F.2d 721; Bailey v. Slentz, 10 Cir., 189 F.2d 406;

■

Binder v. Commercial Travelers Mut. Acc. Ass'n, 2 Cir., 165 F.2d 896.

3. Hulett v. Brinson, D.C.Cir., 229 F.2d 22.