The HECHT COMPANY, a corporation,
Appellant,

v.

The DISTRICT OF COLUMBIA, a munici-
pal corporation, Appellee.

No. 2085.

Municipal Court of Appeals for the
District of Columbia.

Argued Nov. 12, 1957.

Decided March 17, 1958.

Rehearing Denied March 28, 1958.

**858**

John P. Arness, Washington, D. C., with whom John J. Ross, Washington, D. C., was on the brief, for appellant.

Richard W. Barton, Asst. Corp. Counsel, with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Miss Ruth O'Neil fell on a defective sidewalk adjacent to appellant Hecht Company's warehouse and subsequently brought suit against both Hecht and appellee District of Columbia. Each defendant answered and, in addition, the District filed a cross-claim against Hecht alleging that it was solely liable for Miss O'Neil's injuries by virtue of a written agreement, dated December 17, 1936,

"* * * in which the Hecht Company, a corporation, agreed in writing,

in consideration of permission to use public parking space, to keep it in a safe condition and to save the District of Columbia harmless from and to indemnify it for any loss or damages arising out of use of said public parking space."

Hecht entered a general denial to the cross-claim.

Miss O'Neil's counsel then dismissed with prejudice her claim against Hecht. The two claims, i.e., Miss O'Neil's action against the District and its cross-claim for indemnity against Hecht, came on for trial on May 21, 1957. No question has been raised about this procedure and we think it was correct. While technically Hecht ceased to be a "co-party," as referred to in Rule 13(f) of the Municipal Court Civil Rules, when Miss O'Neil dismissed her suit against it, retention by the court of jurisdiction of the cross-claim without compelling the District to file a third-party complaint as provided by Rule 14, was proper. See Frommeyer v. L. & R. Construction Co., D.C.N.J.1956, 139 F.Supp. 579, 585–586.

On the day of trial counsel for Hecht moved for a severance of the cross-claim from the principal action, contending that the issues were distinct and that the case could be disposed of more expeditiously by separate trials. The motion was denied without prejudice. At the close of Miss O'Neil's evidence the motion was renewed and this time the trial judge granted it. Counsel for Hecht then retired from the courtroom. The District proceeded with its evidence, and the case was submitted to the jury which returned a verdict for Miss O'Neil in the amount of $1,700.

On June 10, 1957, the cross-claim came on for trial before the same judge without a jury. The District presented its evidence and subsequently the court, in a memorandum opinion, found for the District. A judgment was entered in favor of Miss O'Neil for $1,700 against the District, and a like judgment in favor of the District against Hecht. Hecht has appealed.

In preparing the record on appeal Hecht designated only the record of the proceedings held on June 10, 1957, i.e., the trial of the cross-claim. The District counter-designated the transcript of the proceedings held on May 21 and 23, i.e., the trial of the principal action. The record of the proceedings at the first trial was never formally introduced in evidence in the second trial. Accordingly, Hecht moved to strike the material counter-designated by the District on the ground that it was not properly before the court at the second trial, and thus could not be included in the record on appeal. The trial court granted the motion with respect to such portions of the proceedings as occurred after the grant of the motion for severance, and denied it as to the remainder.

In this court appellant has filed another "Motion to Correct the Record," urging us to strike the part of the proceedings of the first trial, that has been certified to us, on the same grounds advanced below. When the motion was originally filed here, we denied it without prejudice. We shall now dispose of the motion.

I

■ Hecht's position is that since the record of the first trial was not formally introduced into evidence at the second trial, the trial judge could not consider it, or any part of it, in rendering his decision on the merits of the cross-claim; similarly, Hecht argues that the record is not properly before us and that we cannot consider it in reviewing the judgment on the cross-claim. We cannot agree.

■ The cross-claim was based on a theory of indemnity. The general rule is that where an indemnitor has been given notice of and an opportunity to defend a suit brought against the indemnitee, a judgment rendered in such an action, as well as the resolution of all issues material to such judgment, is conclusive on both parties in a subsequent suit for indemnity.[1] It is obvious then that the first suit has a material bearing on and relation to the second suit. If the two suits are wholly separate, that is, the second suit is not initiated until after the first one is terminated, the proceedings in the first action would necessarily have to be the subject of formal proof in the second one, as the only way properly to apprise the court of the existence of the first judgment.

When the suits are joined in a single action and tried together, however, it is our opinion that there is no longer any need for such formal proof. The second suit, in effect, becomes an ancillary action to the principal claim,[2] and if, as occurred here, the two suits are joined initially but subsequently tried separately, we believe that the judge at the second trial may, if necessary, take judicial notice of the proceedings at the initial trial.[3] Any other result would serve only to frustrate rather than further the general policies behind Rule 14, i. e., " * * * to save the time and cost of a reduplication of evidence, [and] to obtain consistent results from identical or similar evidence, * * *."[4]

It does not appear from the record that the trial judge at the second trial was actually asked to take judicial notice of the first trial, but it is quite apparent from his memorandum opinion that he did so. Further, since he could take notice of the entire trial, and not merely that part of it prior to the grant of the motion for sev-

1. Washington Gaslight Co. v. District of Columbia, 1896, 161 U.S. 316, 329–330, 16 S.Ct. 564, 40 L.Ed. 712; 42 C.J.S. Indemnity § 32; 25 Am.Jur., Highways, § 395.

2. Compare the discussion in 3 Moore's Federal Practice § 14.26 (2nd Ed.1948), in which it is pointed out that a third-party claim is generally considered to be of an "ancillary" nature in deciding jurisdictional questions.

3. See, in general, 31 C.J.S. Evidence § 50 b.

4. 3 Moore's Federal Practice § 14.04 (2nd Ed.1948).

erance, it was error to have omitted from our record the latter part of the proceedings after severance. Accordingly we have, by order, supplemented the record before us with the missing part of the proceedings from the first trial and shall consider it, under the rules with respect to the conclusiveness of the first judgment, in reviewing the judgment rendered on the cross-claim.

## II

The evidence showed that Miss O'Neil fell and was injured on a sidewalk adjacent to a building owned by Hecht. This sidewalk is located on an area commonly referred to as public "parking," which is under the control of the District. There was evidence that in 1936 Hecht employed the Consolidated Engineering Company, an independent contractor, to erect the building. Testimony by an officer of Hecht disclosed that the building contract included the construction of the sidewalk in question. A clause in the contract required that

> "All work shall conform to ordinances and regulations of the District of Columbia, * * *."

■ At the time of this construction there was in effect a police regulation forbidding paving of public parking without permission of the Commissioners. Applicable portions of the regulation are printed in the margin.[5] The trial court could take judicial notice of this regulation.[6] The record does not indicate, however, that the court was ever asked to, or did in fact take notice of this regulation. For the purposes of our decision we shall assume, without so holding, that we, as an appellate court,

can take notice of this regulation in the situation presented here, involving as it does only questions of law.[7]

We may note in passing that this regulation does not appear to require that applicants for permits own or have an interest in the land adjoining the public space sought to be paved.

The District introduced into evidence a microfilm record of a document from the files of its permit office reading as follows:

> "This Application Is Not A Permit
> Dec. 17 1936
> 4448   Dec. 15 36
> Book ...... No. ...... Washington ............, 19 ....
> *I, or we, owner of premises, do hereby apply for permission to make the necessary excavation for the purpose of paving the parking space at No. ....*
> Hecht Warehouse—S.E. corner New York
> ......................................................
> Avenue & Fenwick St. N.E.
> ......................................................
> Consolidated Eng. Co.
> ...........................
> By [Signature Illegible]
> ...........................
> Balto. Md.
> ......................................................
> Approved   Recommended
> Dec. 16, 1936   [Signature Illegible]
>        Insp.
>   L. M. F.  1.00
> Received of ............ $............ Permit Fee....
>  Engineer of Construction .........................
>  Street Division.  Collector of Taxes, D. C."

The application also contained this language:

> "As a condition precedent to the issuance of the permit on this application, and in consideration thereof the permittee hereby expressly agrees to comply with all of its terms and conditions, and further, to save harmless, indemnify, and keep indemnified, the District of Columbia from any injury, cost, loss or damage by reason of negli-

---

5. Police Regulations of the District of Columbia, amended to October 30, 1933, Art. IV:
"Sec. 3. No person shall, without the written authority of said Commissioners, change the grade of any parking, or pave or cover any portion thereof, * * *.
"Sec. 3a. Permits to pave the public parking in districts zoned for first commercial, second commercial, and industrial uses will be granted by the permit

clerk of the Engineer Department upon the recommendation of the engineer of highways and upon payment of a fee of $1 for each permit."

6. Tipp v. District of Columbia, 1939, 69 App.D.C. 400, 102 F.2d 264.

7. Other jurisdictions are in conflict on this question. See the annotation, 111 A.L.R. 959, 964–966.

gence in the construction of said paving, or his failure, after completion to at all times maintain said paving in a safe condition.

"Provided: That should said paving, in the opinion of the Engineer of Highways of the District of Columbia, become dangerous to person or property, the District of Columbia may then cause the condition to be remedied, and charge the costs thereof to the owner of the premises abutting said paving." [8]

The District was unable to supply any other testimony about the events surrounding the execution of the application; it could not show who filled out the form, nor could anyone identify the signature on it. The District was also unable to produce any permit issued pursuant to this application. For the purposes of our decision, we assume that such a permit was in fact issued.

The District's claim against Hecht was chiefly predicated on the indemnity agreement. Since on its face the permit application was executed by Consolidated, the District sought to impose liability on Hecht on the theory that Consolidated was authorized by Hecht to act as its agent in securing the permit, and thus to enter into the indemnity agreement for Hecht.[9] The lower court found that Consolidated was Hecht's agent for this purpose, and ultimately held Hecht liable on the agreement.

As evidence of the alleged agency relationship, the District relies on the wording in the application, "I or we, owner of premises, do hereby apply * * *." Since Hecht and not Consolidated was the owner of the adjoining land, the District argues that the application could only be made by Hecht and thus Consolidated was of necessity acting as Hecht's agent in obtaining the permit. The District also contends that the provision in the building contract requiring that all work conform to District of Columbia regulations constituted a grant of authority to Consolidated to secure all necessary permits for Hecht.

It is our conclusion that this evidence was insufficient to establish an agency relationship. Standing alone the application form gives no hint of any agency relationship; there is no disclosure of the existence of a principal or that it was being secured in behalf of such a principal. Even giving it the full effect contended for it by the District, at best it constitutes only a representation by the agent of his supposed status. This is not enough.

"'* * * The authority of the agent must in all cases be traced to the principal and must be established by evidence of his acts or statements. * * * The agent's acts and statements cannot be made use of against the principal until the fact of his agency has first been shown by other evidence.'" [10]

Nor can we agree that the requirement that all work must conform to the building regulations constituted a grant of the necessary authority. At most it was only a specification as to certain standards the construction was to meet. As we have indicated, Consolidated was employed as an independent contractor to do the work and thus it was in general responsible to Hecht only for a result. There was then no general agency. It is true that a person may be an independent contractor for certain purposes and an agent for other purposes,[11] but again it is still necessary to show the

8. It should be noted that the regulation requiring permits for paving is silent as to the giving of such an indemnity agreement in return for the issuance of a permit.

9. Consolidated was never made a party to this action.

10. Swift v. White Oak Coal Co., 1915, 44 App.D.C. 159, 161.

11. See annotation, 19 A.L.R. 226, 270–271.

existence of the agency. Nowhere in the building contract, which comprised the entire agreement between the parties, is there any indication that Consolidated was given authority to secure permits in Hecht's name, and thus bind Hecht in an indemnity agreement. The burden was on the District to establish agency, and we do not think it has succeeded.

Although the District has not argued the point, we have considered whether, in view of testimony that Hecht "accepted" Consolidated's work, which presumably would include the sidewalk, there was a ratification by Hecht of Consolidated's act in obtaining the permit. We have rejected this approach, however, for two reasons. First, as we have shown, on the record before us it is doubtful that Consolidated was purporting to act as Hecht's agent when it executed the application.[12] Secondly, there is no evidence that Hecht, when it "accepted" the work, did so with knowledge of the existence of the indemnity agreement in the permit.[13]

In view of our holding on this issue, it is unnecessary for us to consider the numerous other questions raised by Hecht with respect to the trial court's ruling on this phase of the case.

### III

Apart from the indemnity agreement in the permit application, the District also contends that Hecht, as the abutting property owner, enjoyed a servitude in the sidewalk for its own private benefit, and thus had the primary duty to exercise due care to maintain the walk. The District relies on the rule that when the abutter makes such a "special use" of the walk, and there is a recovery against the municipality because of a defect in the walk, the municipality has the right to seek indemnity from the abutter as the person primarily liable.[14]

The evidence established that Hecht's building is located on the southeast corner of the intersection of New York Avenue and Fenwick Street, N. E. New York Avenue runs in an east-west direction; Fenwick Street runs in a north-south direction. The entire area between the north side of Hecht's building and New York Avenue is a public "parking" area, which is under the control of the District. Adjacent to and touching Hecht's north wall is the sidewalk in question, on which Miss O'Neil was injured. Next to it is a sodded area, then another sidewalk, then another sodded area, and finally the curb line of New York Avenue. The sidewalk adjacent to the north wall extends on its western side into the Fenwick Street sidewalk, but on the east end it terminates at the east wall of the building. At the eastern end of the walk there is a door leading into the building. There was testimony that employees and customers of Hecht used this walk in order to reach this door. There was no evidence to indicate that any other use was made of the walk. The trial court found in effect that the sidewalk was being used solely for the benefit of Hecht, and consequently awarded the District judgment on this alternative basis, as well as on the ground of the indemnity agreement, which, as we have shown, was insufficient.

In Bowles v. Mahoney, 1952, 91 U.S. App.D.C. 155, 202 F.2d 320, certiorari denied 1953, 344 U.S. 935, 73 S.Ct. 505, 97 L.Ed. 719, a passageway, protected on each side by a retaining wall, was constructed across a public "parking" area so as to connect a private residence with another sidewalk which ran parallel to the street. A child playing in the passageway was injured when a portion of one of the retaining walls collapsed and struck him. Among other things, the court held that the tenant of the premises and not the Dis-

---

12. Slater v. Berlin, D.C.Mun.App.1953, 94 A.2d 38, 42.

13. 2 Am.Jur., Agency, § 229.

14. 19 McQuillin, Municipal Corporations, § 54.19 (3rd Ed.1950).

trict of Columbia was responsible for the maintenance of the passageway and retaining walls, and consequently the child's injuries, stating:

"Since the parking area is not a thoroughfare and is not for the general use of the public, the retaining wall was not erected to serve any public purpose, but, as the plaintiff pleaded in his complaint, was built for the benefit of the premises at 2320 H Street. The retaining wall and street-level passageway over the parking were and are appurtenances of those premises. They were not and are not appurtenances for the use of the general public, as were those involved in Altemus v. Talmadge, 1932, 61 App. D.C. 148, 58 F.2d 874, but were for the use and convenience of the tenant and his invitees in reaching the rear of the leased premises. No other person had any occasion to use the passage. * * *"[15]

■ It is our opinion that the instant case is analogous to and controlled by the ruling in the Bowles case. The evidence here shows that this sidewalk leads only to Hecht's building and is used only by people who enter the building. It is, then, an appurtenance of the building only, and not used in any way by the general public. Accordingly the trial court was correct in awarding the District judgment on the cross-claim on this basis.

■ Hecht argues that the District did did not rely on this theory of the case at trial. It contends that had it realized that this point was to be an issue, it might have introduced evidence of its own on the question. We cannot agree for several reasons. Counsel for the District informed the court in his opening statement that he was relying on the Bowles case. Counsel asked various witnesses several questions relating to "special use" to which no objection was made. Hecht's counsel himself asked one witness, an officer of Hecht, whether Hecht had ever exercised any dominion and control over the public space in question. We think the issue was properly, though perhaps somewhat inartistically, presented to the court.

Affirmed.

■ ROVER, Chief Judge, and HOOD, Associate Judge, concur in the result, but would also affirm on the ground that the trial court was justified in its holding that Consolidated Engineering Company in applying for the permit acted as agent for the Hecht Company.

15. 91 U.S.App.D.C. at page 160, 202 F.2d at page 324.