Gladys **WINGFIELD**, Appellant,

v.

**PEOPLES DRUG STORE, INC.,**
Appellee.

No. 11243.

District of Columbia Court of Appeals.

Argued June 29, 1977.

Decided Oct. 20, 1977.
Rehearing and Rehearing en Banc
Denied Jan. 23, 1978.

Edward L. Genn, Washington, D. C., for
appellant.

John Jude O'Donnell, Washington, D. C., for appellee.

Before KERN, GALLAGHER and MACK, Associate Judges.

KERN, Associate Judge:

This appeal presents for our determination the propriety of certain rulings by the trial court during the trial of a negligence action which ultimately resulted in a jury verdict for the plaintiff, Gladys Wingfield, who is the appellant in this court.

The record reflects that in February 1972, appellant requested appellee drugstore to refill a prescription for Valium, a medicine she was taking under her physician's direction to "reduce [her epileptic] seizure potential" (Record at 53). A short time after taking the pills with which appellee had refilled her prescription, appellant noticed changes in her physical and mental state, including loss of appetite, lethargy, depression, weight loss, muscle twitching, and frequent urination. Appellant later testified that these changes had made her "fearful" but that she did not associate them with her medication. She was unable to sleep and her mental state was very disturbed during the time she was taking what turned out to be the wrong medication. She stated:

I was delirious. I was seeing things, like caskets and what have you. My thoughts were running away with me. And, I really felt like I was going to die. (Record at 74.)

Her anxiety increased to the point where she was taking more than her normal dose of the two supposed "Valium" tablets every day.

Appellant's symptoms continued for a week until February 23, when she called the drugstore and determined that the drug she had been taking was *not* Valium. The next day she visited her doctor who confirmed that the drug was not Valium (Record at 234). *Appellant* complained to him of nervousness and depression, as well as backache, weight loss and muscle cramps. Dr. Biben administered tests and found that her uric acid levels were abnormally high, her electrolytes out of balance and she had lost some eight pounds (Record at 235). Dr. Biben also changed appellant's Valium intake from two to four tablets per day to combat her increased anxiety. Appellant continued to take the increased dosage for "months" afterward (Record at 43).

Appellant was examined by Dr. Biben on March 2, 1972 and again on April 4, 1972. The doctor reported that the test results were normal; she had regained all her weight; and he believed that the ingestion of the wrong medication "would have no permanent or lasting effect" on the appellant (Record at 272). During this last visit, appellant still complained of nervousness.

In June 1972, appellant went to North Carolina to stay with her sister. Appellant stated that she left the D.C. area because:

I was sleeping so much . . . I didn't feel up to taking care of the children. My condition, at this time, I felt, was just helpless . . .. (Record at 44.)

Appellant testified that she suffered from fears during her stay in North Carolina that she had not suffered prior to her ingestion of the wrong medication in February 1972, particularly:

. . . the fear that I would not be able to be gainfully employed again; the fear that what we had accomplished . . . in the form of a home, . . was going to be lost because of the loss of my salary. And, the fear that I wasn't going to get well. (Record at 52.)

In February 1973, twelve months after the wrong medication incident, appellant returned to her home in Washington and visited Dr. Biben. He stated that her physical problems had ended, but she had "emotional" problems and he referred her to a psychiatrist. (Record at 270, Supp. Record II at 263.) Appellant continued to take Valium.

Appellant was in a serious automobile accident on May 8, 1973. Following the accident, appellant did not obtain full-time employment again until February 1974, when she became a nursing assistant at

Walter Reed Hospital (Record at 64). She was still working at Walter Reed and had received a promotion at the time of trial in 1976.

Appellant instituted action against appellee in the trial court for a negligent and wrongful filling of her prescription. She alleged suffering primarily emotional and mental injury as a result of taking the wrong medication, although she also included allegations of temporary physical injury in her claim.[1]

Two trials have been held in which the juries have returned verdicts in favor of appellant. In December 1975, the first jury found in Mrs. Wingfield's favor for $250,000, but the trial court granted a new trial on the ground that the verdict was excessive. In May 1976, a new trial was held and the jury returned a verdict of $6,500 in her favor. On this occasion, appellant moved for a new trial which the court denied. Appellant has filed a timely appeal in this court claiming that the following rulings by the trial court constitute error: (1) the grant of a new trial in December 1975 on the ground that the verdict was excessive; (2) the court's instructions to the jury on contributory negligence; (3) the court's refusal to allow appellant to testify concerning her mental state following the May 1973 automobile accident which occurred 15 months after she had received the wrong medication; and, (4) the court's instructions to the jury on damages.

■ As to appellant's contention that the first jury's verdict for $250,000 should be reinstated, it has been long recognized that the trial court has power to grant a new trial when it believes that the damages awarded are excessive and that "its action in granting or denying . . . a motion for new trial is . . . reviewable only for abuse of discretion." *Munsey v. Safeway Stores*, D.C.Mun.App., 65 A.2d 598, 600 (1949); *Cox v. Pennsylvania Railroad Co.*, D.C.Mun.App., 120 A.2d 214 (1956). The test which a trial court uses to determine if a verdict is excessive is whether the verdict is "beyond all reason, or . . . is so

great as to shock the conscience." *Williams v. Steuart Motor Co.*, 161 U.S.App.D.C. 155, 494 F.2d 1074 (1974). Alternatively, the test has been stated to be whether the verdict "is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate." *Graling v. Reilly*, 214 F.Supp. 234 (D.D.C.1963). Appellant contends that the trial judge did not use the proper test here in ordering a new trial for excessiveness of the verdict because he stated that the verdict was "*almost* beyond reason." (Supp. Record II at 257; emphasis added.) However, the court's order, read in its entirety, establishes that the judge did apply the correct test. Thus, at one point, he stated: "we were shocked by the verdict. I think if we could have read the minds of counsel and the litigants themselves, it would have disclosed that they were shocked too." (Supp. Record II at 254.) Later, the judge stated: "I'm satisfied in this case that the verdict is not fair and reasonable and [it's not] based on the evidence." (Supp. Record II at 257.) We do not find an abuse of discretion by the trial court in ordering a new trial upon the jury's award after the first trial of $250,000.

■ Appellant next contends that the court should have charged that a "substantial degree" rather than "some degree" of contributory negligence was required on appellant's part in order for the jury to find that she could not recover for her injuries. The instruction given in the instant case was a correct statement of the law since the District of Columbia does not recognize different degrees of contributory negligence. The rule is simply that contributory negligence bars a plaintiff's recovery. *Karma Construction Co., Inc. v. King*, D.C.App., 296 A.2d 604, 605 (1972). Moreover, appellant, as a verdict winner, must show prejudice before she can challenge a jury instruction. *Wright v. Crown Co.*, D.C.App., 267 A.2d 347 (1970). Here, the jury returned a verdict in her favor. Had the jury relied on the court's instruction and found appellant

1. Her physical injuries included high uric acid levels, electrolyte imbalances and weight loss.

contributorily negligent, no verdict in her favor would have been rendered. Under these circumstances appellant has made no showing of prejudice occurring as a result of the court's instruction on contributory negligence.

■ Appellant claims it was error for the court to refuse to admit the testimony she proffered concerning her mental state after the automobile accident in May 1973—some 15 months subsequent to appellee's alleged negligence in refilling incorrectly the Valium prescription. She contends that the court's exclusion of this evidence arbitrarily limited the time period for which she could recover damages. In excluding the proffer, the court noted that appellee could not be responsible for all of appellant's mental suffering after the accident,[2] and that appellant had produced no evidence of a causal connection between the erroneous filling of the prescription and her continued emotional anguish after the May 1973 auto accident. Thus, the court concluded that appellant's proffer was too prejudicial to appellee to be admitted into evidence (Record at 66–69).

Appellant in our view of the record did not show a causal link between appellee's negligence in 1972 and her mental suffering following the accident of 1973. Without evidence of causation, the jury would have found it difficult, if not impossible, to determine what fraction of her mental suffering after the accident had been caused by the 1972 error on the part of appellee drugstore and what portion had been caused by the accident. Therefore, we cannot say as a matter of law, that the court's exclusion of the proffered testimony concerning her mental state after the accident was error under the particular circumstances here.

■ Appellant's final claim of error is that the court's instructions to the jury did not adequately present her theory of damages, because the phrase "pain, discomfort, [and] mental anguish" used by the judge in his charge did not encompass her particular injuries. What appellant requested, but the court refused to give, was an instruction that defined the non-physical elements of the injury which she had alleged:

[t]he ability to engage in and enjoy non-occupational activities and pleasures; or enjoying life, or (taking) advantage of privileges and enjoyments common to others, for fears and apprehensions, depressions, . . . loss of vitality, fear and worry she felt over what effect that incident or negligence or aggravation might have on her future . . .. (Appellant's Brief at 45.)

If the party's theory of damages is supported by the evidence then he is of course entitled to have his theory submitted to the jury. *Metropolitan Life Insurance Co. v. Adams*, D.C.Mun.App., 37 A.2d 345, 350 (1944). The evidence here supported an instruction on mental and emotional injury and the court did, in fact, charge the jury concerning appellant's entitlement to recover for "pain, discomfort, [and] mental anguish."

The question, then, is whether appellant is entitled to the more detailed instruction which she requested. She argues, citing *Montgomery v. Virginia Stage Lines*, 89 U.S.App.D.C. 213, 191 F.2d 770 (1951), that a generally worded instruction, such as was given in the instant case, is not sufficient. However, the instruction there did not contain even the "substance" of an important point of law in the case; in contrast, the "substance" of appellant's damage claim in the instant case was presented by the

---

**2.** We note that appellant's testimony concerning her anxieties during the time period from February 1972 until *May 1973* (as well as the testimony of appellant's sister and Dr. Biben) had presented to the jury evidence of the *continuing* nature of her mental suffering after the erroneous refilling of her prescription. In light of this testimony and the fact that the trial

judge did instruct the jury that appellant could recover for the pain, suffering and mental anguish she might reasonably suffer in the future as a result of the misfilling of the prescription, the record does not support appellant's contention that the court *totally* prevented jury consideration of her fears and anxieties after May 1973.

charge to the jury.[3] This court stated in *Evans v. Capital Transit Co.*, D.C.Mun.App., 39 A.2d 869, 871 (1944):

> [T]he refusal to grant an instruction is not grounds for reversal when the charge as given, although in a more general form, fully informs the jury as to the law.

*See also Hartman v. Meadows*, 243 Md. 158, 220 A.2d 555 (1966); *Novella v. Hartford Accident and Indemnity Co.*, 163 Conn. 552, 316 A.2d 394 (1972). Therefore, we conclude that the damage instructions as given were not erroneous.

*Affirmed.*

---

**3.** Appellant also cites *Reese v. Wells*, D.C.Mun. App., 73 A.2d 899 (1950); *Bourne v. Washburn*, 142 U.S.App.D.C. 332, 336, 441 F.2d 1022, 1026 (1971), and *District of Columbia v. Woodbury*, 136 U.S. 450, 466, 10 S.Ct. 990, 34 L.Ed. 472 (1898), as requiring that quite specific instructions suited to the facts of each case be given. However, in all three cases the general instruction given was erroneous because it clearly excluded a major point of law of which the jury should have been made aware in order to be able to reach a fair and informed verdict. The general instructions in those cases effectively misled the jury. The damage instruction given by the trial court in the instant case did not exclude a major legal principle and did not mislead the jury.