**DISTRICT OF COLUMBIA, Appellant,**

v.

**Elsa MURTAUGH and Ebone,
Inc., Appellees.**

**Ebone, Inc., Cross-appellant,**

v.

**District of Columbia, Cross-appellee.**

Nos. 97–CV–908, 97–CV–1035.

District of Columbia Court of Appeals.

Argued Jan. 12, 1999.

Decided May 13, 1999.

James C. McKay, Jr., Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant in No. 97–CV–908 and cross-appellee in No. 97–CV–1035.

Henry E. Weil, Rockville, MD, for appellee Elsa Murtaugh in No. 97–CV–908.

Andrew J. Marter, with whom Sharon A. Marcial, Rockville, MD, was on the brief, for appellee Ebone, Inc. in No. 97–CV–908 and cross-appellant in No. 97–CV–1035.

Before WAGNER, Chief Judge, and SCHWELB and REID, Associate Judges.

REID, Associate Judge:

In No. 97–CV–908, appellant, the District of Columbia ("the District"), appeals the judgments of the trial court (1) denying its motion for judgment as a matter of law, new trial or remittitur after a jury verdict awarding appellee Elsa Murtaugh judgment in the amount of $250,000 in her personal injury lawsuit charging the District and appellee, Ebone, Inc. ("Ebone"), with negligence in the repair and maintenance of an alley, and (2) entering judgment in favor of Ebone on the District's cross claim for indemnification and contribution. In No. 97–CV–1035, Ebone appeals the judgment of the trial court granting the District's motion to vacate and re-enter its judgment on the District's cross claim against Ebone. We affirm the $250,000 entry of judgment in favor of Ms. Murtaugh in No. 97–CV–908. In No. 97–CV–1035, we affirm the trial court's judgment vacating and re-entering judgment against the District. Finally, we affirm the trial court's judgment on the District's contribution and indemnity cross claim in No. 97–CV–908.

## FACTUAL SUMMARY

*Trial Testimony and Verdict*

During the trial on her complaint, Ms. Murtaugh testified that on December 4, 1992, she fell when she stepped into an unprotected depression in an alley on Bank Street in the Georgetown section of Washington, D.C., and fractured her right wrist. According to Ms. Murtaugh, she noticed a wooden "saw-horse" type barrier with orange tape on it. As a result, she focused her attention on the barrier because she believed that it was a warning of a dangerous condition on the street's surface. As she attempted to pass the barrier, she fell. She described her injuries in part as follows: "I was bleeding in my head. My hips were hurting ... my hand ... looked terrible." The hospital informed her that she had "an open fracture" of the hand. Photographs taken the day after Ms. Murtaugh's fall showed that the wooden saw-horse barrier was positioned directly over the pothole.

During trial, a portion of the videotape deposition of Officer Peter A. Cooke of the Metropolitan Police Department was read to the jury. Officer Cooke testified that while he was on routine patrol around 6 p.m. on November 17, 1992, he noticed an area of wet cement containing "imprints" in the Bank Street Alley. The wet cement was surrounded by three saw-horse wooden barriers, connected by tape. Later that same evening, he contacted the Mayor's Command Post, and informed a Mr. Robinson about the condition. During his deposition, Cooke reviewed photographs of the Bank Street Alley taken at Ms. Murtaugh's direction after her fall. He stated that the pictures appeared to show the same pothole or same general area and condition that he had observed on November 17, 1992 and had reported to the Mayor's Command Post.

According to the District's responses to interrogatories, during 1992, Ebone, a construction contractor, entered into a contract with the District for repair of streets and roads. Under the contract, Ebone performed work in the Bank Street Alley near the 1200 block of Bank Street, N.W. However, Ms. Belle Vee Gentry, the president of Ebone, testified that Ebone repaired a cut made by Bell Atlantic in a section of the Bank Street Alley on November 17, 1992, but not in the area where Ms. Murtaugh fell. Ms. Gentry further testified that Ebone did not repair the area depicted in the photographs because the repairs were made with a different type of cement which had a different color than that authorized for use by Ebone. Moreover, she stated, the barricade was not of the type used by Ebone in 1992; the cement was not raked or edged like other Ebone jobs; and the depth of the cement was different from other work performed by Ebone. She asserted that Fort Meyer Construction also had a contract to do similar work for the District during the 1992 time period.

Before charging the jury on October 18, 1995, the trial court granted Ebone's motion for a directed verdict on the ground that Ebone put in affirmative evidence to show that it did not perform work in the area

where Ms. Murtaugh fell. Immediately after the court's ruling, counsel for Ms. Murtaugh stated: "The District has a cross claim against Ebone." The trial judge responded, *inter alia:* "They can fight it out later. They could put on evidence . . . and hopefully keep Ebone in the case."

. The jury rendered a $250,000 verdict in favor of Ms. Murtaugh.

*Post–Trial Rulings*

On November 8, 1995, the District filed a post-trial motion for judgment as a matter of law, a new trial or remittitur. After reviewing the evidence in the light most favorable to Ms. Murtaugh, the trial court denied the District's motion on December 1, 1995. The court determined that: (1) judgment n.o.v. was not warranted because "the verdict was entirely consistent with the evidence as well as plaintiff's theory of the case"; (2) no new trial would be granted because, *inter alia,* "[t]he verdict was not against the weight of the evidence"; and (3) remittitur was not appropriate because the verdict was not excessive "[g]iven the severity of plaintiff's injury and the claim of permanence growing out of it." The District filed a notice of appeal on January 11, 1996.[1]

In response to the District's motion for an evidentiary hearing on its cross claim, the trial court requested a proffer. At a hearing on July 16, 1996, the court concluded that the District was not entitled to contribution or indemnity from Ebone. Nonetheless, "for appellate purposes" the trial court permitted the District "to make an evidentiary proffer." After the evidentiary proffer on August 5, 1996, the trial court orally entered judgment in behalf of Ebone on the District's cross claim. Judgment was entered in open court in the presence of counsel for Ebone and the District, and was docketed on September 9, 1996. The docket entry stated in relevant part: "Judgment entered for def Ebone, Inc. on the District[']s cross-claim . . . reasons articulated on the record orally. . . ."

On March 4, 1997, the District filed a motion requesting that the court enter final judgment or vacate and re-enter judgment on its cross claim against Ebone. The District contended, *inter alia,* that no "separate document" had been entered as required by Super. Ct. Civ. R. 58, and that the requirements of D.C.App. R. 4(a)(3) had not been met. On April 30, 1997, the trial court granted the District's motion to vacate and re-enter judgment. As grounds for its decision, the trial court stated: "Notice from the Clerk's Office even by way of computer printout seems to be required under D.C.App. R. 4." The "re-entered" judgment was docketed on May 7, 1997, and the District noticed its appeal on May 22, 1997. Ebone filed a cross-appeal on June 9, 1997, challenging the trial court's decision to vacate and re-enter its judgment.

## ANALYSIS

*The District's Motion for Judgment N.O.V., New Trial and Remittitur*

The District contends that it is entitled to judgment against Ms. Murtaugh as a matter of law or a new trial because Ms. Murtaugh failed to offer any evidence that the District had prior notice of the dangerous condition that caused her injury. The District also maintains that the verdict against it was excessive, and thus, it is entitled to remittitur. Ms. Murtaugh argues that the jury's verdict against the District is supported by substantial evidence. In particular, Ms. Murtaugh points to the videotape deposition in which Officer Cooke testified that he notified the Mayor's Command Center of the dangerous condition on November 17, 1992.[2] Ms. Murtaugh also testified that the horseshoe barriers were not around the Bank Street Alley depression into which she stepped several days later, on December 4, 1992. In addition, the evidence shows that the District contracted with Ebone for repairs in the Bank Street Alley.

 This court grants a motion for judgment after trial and verdict only in " 'extreme' cases." *Oxendine v. Merrell Dow*

---

1. This court dismissed the District's appeal on the ground that it had been taken from a nonfinal order.

2. The deposition testimony was admitted into evidence.

*Pharm. Inc.*, 506 A.2d 1100, 1103 (D.C.1986). "[W]e view the evidence in the light most favorable to the appellee[ ], and '[w]e reverse only if no reasonable juror could have reached the verdict.' " *District of Columbia v. Walker*, 689 A.2d 40, 42 (D.C.1997) (quoting *Kane v. Ryan*, 596 A.2d 562, 564 (D.C. 1991) (citations omitted)). Moreover, "[t]he trial court has broad latitude in passing upon a motion for new trial," and we review such motion only for abuse of discretion. *Gebremdhin v. Avis Rent–A–Car Sys., Inc.*, 689 A.2d 1202, 1204 (D.C.1997). Before granting a motion for a new trial, the court must find that the verdict is against the weight of the evidence, or that there would be a miscarriage of justice if the verdict is allowed to stand. *Id.* An excessive verdict is one which is " 'beyond all reason, or ... is so great as to shock the 'conscience.' " *Wingfield v. Peoples Drug Store Inc.*, 379 A.2d 685, 687 (D.C.1977) (quoting *Williams v. Steuart Motor Co.*, 161 U.S.App. D.C. 155, 166, 494 F.2d 1074, 1085 (1974)).

█ In this case, given the testimony of Officer Cooke and Ms. Murtaugh, the photographic and other documentary evidence, there was ample evidence to support the jury's verdict against the District. Therefore, we cannot say that the jury's verdict was against the weight of the evidence; nor can we say that it was excessive. Accordingly, we affirm the trial court's $250,000 judgment against the District and in Ms. Murtaugh's favor.

*Ebone's Challenge to the Timeliness of the District's Appeal*

Ebone contends that the trial court erred in vacating and re-entering judgment against the District on its cross claim, and thus, the District's appeal of the cross claim judgment is not timely. The District argues that its appeal is timely given the requirements of D.C.App. R. 4(a)(3) and Super. Ct. Civ. R. 58. We consider first whether the trial court erred in its interpretation of Rule 4(a)(3).

D.C.App. R. 4(a)(3) provides:

Entry of judgment or order. A judgment or order is deemed to be entered when it is entered on the civil docket, including microfilmed entry, by the Clerk of the Superior Court. See Super. Ct. Civ. R. 79(a). When judgment or final order is entered or decided out of the presence of the parties and counsel, such judgment or order shall not be considered as having been entered, for the purpose of calculating the time for filing a notice of appeal or an application for the allowance of an appeal under Rule 6, until the fifth day after the Clerk of the Superior Court has made an entry on the docket, including microfilmed entry, reflecting the mailing of notice by that clerk.

The District maintains that "[t]he [court's] judgment [on its cross claim] was 'entered ... out of the presence of the parties,' within the meaning of D.C.App. R. 4(a)(3), [and thus,] the 30–day period for taking an appeal began on the fifth day after the Clerk of the Superior Court has made an entry on the docket ... reflecting the mailing of notice by that Clerk." Under this interpretation, the District argues, the appeal period began to run on May 14, 1997. In contrast, Ebone contends that under Rule 4(a)(3) the appeal period began to run on September 9, 1996, when final judgment against the District on its cross claim was entered on the docket by the Clerk of the Superior Court, because "the 'mailing of notice' by the clerk is not a pre-requisite for the entry of judgment when the judgment or order is *decided in the presence of counsel.*" (Emphasis supplied.) The trial court appeared to adopt the District's position in deciding to grant the District's motion to vacate and re-enter judgment: "Notice from the Clerk's Office even by way of computer printout seems to be required under D.C.App. R. 4."

The trial court misapprehended the clause, "When judgment or final order is entered or decided out of the presence of the parties and counsel," as it appears in Rule 4(a)(3). Perhaps the court was mislead by a footnote which appeared in our opinion in *A.J. v. L.O.*, 697 A.2d 1189, 1191 n. 3 (D.C.1997). In footnote 3 of that decision, we said that current Rule 4(a)(3) "now applies whenever the judgment or final order is 'entered or decided out of the presence of the parties and counsel,' ... even if, as in this case, the parties were on notice of the judge's decision

but were awaiting a written order." *Id.* In *A.J.*, the trial court granted L.O.'s motion to dismiss at a hearing but informed the parties "that she would issue a written order soon thereafter." *Id.* at 1191. In that case, unlike the present case, the court issued an order out of the presence of counsel detailing the reasons for its dismissal of the case. In this case, there was no subsequent order issued out of the presence of the parties. Rather, the court's judgment here was rendered orally on August 5, 1996, and later entered mechanically on the docket, with the express notation that "reasons [for the decision were] articulated on the record orally."

In construing the predecessor version of Rule 4(a)(3), that is Rule 4 II(a)(3), we concluded that the rule "has no application ... where the judgment was rendered in open court in the presence of ... counsel...." *Brees v. Kelly Adjustment Co.*, 302 A.2d 214, 215 (D.C.1973). We also said that: "The rule provides ... that the time for filing a notice of appeal runs whether or not the notice [of the order from which an appeal is taken] is sent or received." *Pryor v. Pryor*, 343 A.2d 321, 323 (D.C.1975). Given the presence of the District and Ebone when the court orally entered judgment for Ebone on the District's cross claim, the "out of the presence of the parties and counsel" provision of Rule 4(a)(3) is inapplicable.

■ Therefore, we hold that where a final judgment or order is entered or decided in the presence of the parties or counsel for the parties, and no further substantive judgment or order is to be entered on the subject matter, the judgment or order is deemed to have been entered when it appears on the civil docket, including microfilmed entry. Thus, in this case, under Rule 4(a)(3), the judgment on the District's cross claim is deemed to have been entered on September 9, 1996.

■ Given our holding with respect to Rule 4(a)(3), the District's appeal would be untimely, unless it must be deemed timely under Rule 58. We now turn to a consideration of Super. Ct. Civ. R. 58.

Super. Ct. Civ. R. 58 provides in pertinent part:

Subject to the provisions of Rule 54(b) [pertaining to judgment upon multiple claims or involving multiple parties]: (1) Upon a general verdict of a jury, or upon a decision by the Court that a party shall recover only a sum certain or costs or that all relief shall be denied, the Clerk, unless the Court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the Court; (2) upon a decision by the Court granting other relief, or upon a special verdict or a general verdict accompanied by answers to interrogatories, the Court shall promptly approve the form of the judgment and the Clerk shall thereupon enter it. *Every judgment shall be set forth on a separate document.*

(Emphasis added.) To determine the timeliness of the District's appeal under Super. Ct. Civ. R. 58, we focus on the italicized language, "Every judgment shall be set forth on a separate document."

We have not had occasion recently to examine Rule 58 with respect to the timeliness of an appeal. However, in *Delany v. Murphy*, 338 A.2d 432 (D.C.1975), we found an appeal to be timely even though judgment had been first announced orally in February 1973, then confirmed in a May 1973 order, followed by entry of judgment in September 1973. We said that prior to the entry of judgment in September 1973, there was no appealable order "since Super. Ct. Civ. R. 58 and 79(a) require that to be effective, a judgment must be contained in a separate document and entered on the civil docket...." *Id.* at 434.

Since our decision in *Delany, supra,* both the Supreme Court of the United States and the District of Columbia Circuit have had an opportunity to examine Fed.R.Civ.P. 58. Super. Ct. Civ. R. 58 is virtually identical to the federal rule. In *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), the Supreme Court stated that: "The sole purpose of the separate-document requirement, which was added to Rule 58 in 1963, was to clarify when the time for appeal ... begins to run." *Id.* at 384, 98 S.Ct. 1117. Furthermore, the Supreme Court said:

The separate-document requirement was thus intended to avoid the inequities that were inherent when a party appealed from a document or docket entry that appeared to be a final judgment of the district court only to have the appellate court announce later that an earlier document or entry had been the judgment and dismiss the appeal as untimely. The 1963 amendment to Rule 58 made clear that a party need not file a notice of appeal until a separate judgment has been filed and entered.

*Id.* at 385, 98 S.Ct. 1117. In reaching this conclusion, the Supreme Court referenced its decision in *United States v. Indrelunas,* 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202, (1973), declaring "that the separate-document rule must be 'mechanically applied' in determining whether an appeal is timely. *Id.* [ ] at 221–22 [93 S.Ct. 1562]." *Bankers Trust, supra,* 435 U.S. at 386, 98 S.Ct. 1117. The Supreme Court explained that: "Technical application of the separate-judgment requirement is necessary ... to avoid the uncertainties that once plagued the determination of when an appeal must be brought." *Id.*

The District of Columbia Circuit has addressed Fed.R.Civ.P. 58. In *Spann v. Colonial Village, Inc.,* 283 U.S.App. D.C. 216, 899 F.2d 24 (1990), the court explained that the rule requires " 'a judgment set out on a separate document—distinct from any opinion or memorandum—which provides the basis for the entry of judgment.' " *Id.* at 224; 899 F.2d at 32 (quoting Fed.R.Civ.P. 58 advisory committee's note regarding the 1963 amendment to the rule). In addition, the rule " 'must be applied in such a way as to favor the right to appeal.' " *Id.* (quoting *Matter of Seiscom Delta, Inc.,* 857 F.2d 279, 283 (5th Cir.1988)). *See United States v. Haynes,* 332 U.S.App. D.C. 421, 424, 158

F.3d 1327, 1330 (1998) (concluding that an appeal was not time-barred under Rule 58 and citing *Shalala v. Schaefer,* 509 U.S. 292, 302–03, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), for the proposition that "a 'separate document' is not needed for an order to become appealable, one is needed to render an appeal untimely").[3]

In short, not until May 7, 1997, did the trial court's order in this case comply with the requirement of Rule 58, that: "Every judgment shall be set forth on a separate document." Thus, the District's appeal of the trial court's cross claim judgment was timely. *See Pack v. Burns Int'l Sec. Serv.,* 327 U.S.App. D.C. 278, 279, 130 F.3d 1071, 1072 (1997) ("Because the district court's order failed to comply with Rule 58, ... notice of appeal cannot be considered late.") (citing *Baker v. Mercedes Benz of North America,* 114 F.3d 57 (5th Cir.1997)). As the court said in *Pack, supra:* "An appellant may ... safely wait until a conforming judgment has been entered and file an appeal at that time." *Id.* (citation omitted).[4]

*The Merits of the District's Appeal Regarding its Cross Claim*

■ In essence, the District argues that it has never had its day in court on its cross claim against Ebone for contribution and indemnity. It maintains that it preserved its right to trial on its cross claim as evidenced by the parties' joint pretrial statement, the court's pretrial order, and the trial judge's statement during trial. Ebone asserts that the District should not be permitted "a second bite at the apple" to litigate its cross claim because Ebone is not a joint tortfeasor and the District is barred by the doctrines of res judicata, waiver and estoppel.

The District's silence during trial on the issue of its cross claim against Ebone is

---

3. In *Schaefer, supra,* the court determined that respondent's application for attorney's fees under the Equal Access to Justice Act was timely in a social security case where, prior to the filing of the application, the district court did not enter its remand order on a separate document as required by Rule 58.

4. Compare *Williams v. Vel Rey Properties,* 699 A.2d 416 (D.C.1997), on the issue of a waiver of the separate document requirement:

> An appellate court will deem the parties to have waived the separate document requirement where (1) no party objects to the taking of the appeal in the absence of a separate judgment, and (2) it is clear that the trial court intended its action to be the final decision in the case.
>
> *Id.* at 420 n. 8 (citation omitted).

puzzling. Ebone's liability clearly was at issue during the trial, as indicated by Ebone's obvious presence and participation in the trial as a defendant. Hence, the issue of Ebone's liability was conclusively resolved at trial. *See Lowery v. Muse*, 151 A.2d 263, 265 (D.C.1959).[5] The District's reliance on *Hecht Co. v. District of Columbia*, 139 A.2d 857 (D.C.1958) is misplaced. There, the trial court severed the cross claim from the main action at the request of the defendant and the cross claim was, thus, not in issue at trial on the main claim. We reiterated that:

> The general rule is that where an indemnitor has been given notice of and an opportunity to defend a suit brought against the indemnitee, a judgment rendered in such an action, as well as the resolution of all issues material to such judgment, is conclusive on both parties in a subsequent suit for indemnity.

*Id.* at 859 (footnote omitted). By remaining silent, the District allowed the issue of Ebone's negligence and its status as a joint tortfeasor to be litigated during the trial and is now bound by the trial court's judgment.[6] We turn now to the effect of the directed verdict in Ebone's favor on the District's cross claim for contribution and indemnification.

 Questions of contribution and indemnity pose legal issues that must be resolved by the court rather than the jury. "In this jurisdiction, the law pertaining to the right of contribution among joint tortfeasors has been established by case precedent rather than by statute." *District of Columbia v. Washington Hosp. Ctr.*, 722 A.2d 332, 336 (D.C.1998) (en banc) (citing *Lamphier v. Washington Hosp. Ctr.*, 524 A.2d 729, 733 (D.C.1987)).

*Contribution*

 The trial court's judgment on the issue of Ebone's negligence forecloses the District's contribution claim against Ebone. "An essential prerequisite for entitlement to contribution is that the parties be joint tortfeasors in the sense that their negligence concurred in causing the harm to the injured party." *Id.* (citing *Washington v. Washington Hosp. Ctr.*, 579 A.2d 177, 187 (D.C.1990) (other citations omitted)). In this case, the judgment of the trial court establishes that Ebone was not a joint tortfeasor and that the District was solely liable for the injuries to Ms. Murtaugh.

 One who is adjudged to be the "sole legal cause of a plaintiff's injuries is not entitled to contribution." *Id.* at 337 (citing *Berg v. Footer*, 673 A.2d 1244, 1248 (D.C. 1996)); *see also Group Health Ass'n v. District of Columbia General Hosp.*, 540 A.2d 1104, 1106 (D.C.1988) ("A claim for contribution will lie only if the defendant is liable, concurrently with the original defendant, to the plaintiff in the original suit.") (citation omitted). Therefore, the District cannot prevail on its claim for contribution as a matter of law. The claim is defeated because of a

---

5. The District points out that on October 18, 1995, prior to charging the jury during trial on Ms. Murtaugh's complaint, the trial judge responded to a statement by Ms. Murtaugh's counsel that, "the District has a cross claim against Ebone." The court's response appeared to recognize that the District's cross claim would be resolved after verdict on the main action. The court stated: "They can fight it out later. They could put on evidence ... and hopefully keep Ebone in the case." These words recognize that the pending claims would be considered after the jury trial on Ms. Murtaugh's claim against the District and Ebone.

6. It was clear from the opening statement of Ms. Murtaugh's counsel that Ebone's liability was in issue. The District made no assertion to the contrary. Moreover, Ebone's counsel moved for a directed verdict three times during trial, making it clear that its liability was in issue. Ebone made its initial motion for a directed verdict at the close of Ms. Murtaugh's case. The motion was denied at this point in the trial. Ebone's second directed verdict motion came at the close of the District's case. Counsel for Ebone argued that "the District has not produced any evidence against [Ebone]." Further, Ebone's counsel declared, "[t]he District has closed its evidence without proof of any document against my client and without having anybody on the stand saying my client was at a certain spot on a particular day." The District's counsel did not respond to this argument. Nor did the court grant the motion. After presenting its case, Ebone made its third motion for a directed verdict. In response the trial judge said: "I will grant the directed verdict as to Ebone. The affirmative evidence that was put on[,] that was not their patch for concrete and cement reasons—they could distinguish their work." Counsel for the District did not comment or object.

judicial determination that Ebone was not a joint tortfeasor. *See District of Columbia v. Washington Hosp. Ctr., supra,* 722 A.2d at 337; *see also Lamphier, supra,* 524 A.2d at 733 n. 5 (citation omitted). Accordingly, the trial court properly denied the District's claim for contribution because Ebone prevailed on the main claim.

*Indemnification*

■ "Indemnity may arise either in contract or in tort: by an express or an implied contract to indemnify; or by equitable concepts based on the tort theory of indemnity, for example, when one party has been only 'technically' or constructively at fault and the indemnitee has been actively at fault." *General Electric Co. v. Cuban American Nickel Co.,* 396 F.2d 89, 90 (5th Cir.1968). The indemnification issue in this case is somewhat complicated because the District's theory of indemnification, as presented in its pleadings and during the pretrial and post trial proceedings, is not consistent. The District's cross claim, which does not reference either an express or implied contract, appears to suggest that the District is seeking equitable indemnification:

> If plaintiff were injured and damaged as alleged in the complaint, and recovers a judgment against defendant District of Columbia, the negligence of cross-defendant Ebone, Incorporated was the primary and active proximate cause of plaintiff's injuries and damages, and any negligence of the District of Columbia was passive and secondary. . . .

Similarly, the joint pretrial statement, which does not mention an express or implied contract, seems to reflect a theory of equitable indemnification. In making its post trial proffer to the court as to what evidence it would present in a hearing on its cross claim, however, the District for the first time explicitly referenced the indemnification clause set forth in its contract with Ebone.[7] In addition, during the July 19, 1996 proceeding on the District's request for·an evidentiary hear-

ing on its claim of indemnification, counsel for the District stated:

> There are two separate issues involved. One is whether or not the District bears any liability and the other one is a contractual matter, whether or not under the contract—the facts will establish that Ebon[e] has a duty to indemnify the District.

The indemnification clause in the contract between the District and Ebone states:

> The Contractor shall indemnify and save harmless the District and all of its officers, agents and servants against any and all claims or liability arising from or based on, or as a consequence or result of, any act, omission or default of the Contractor, his employees, or his subcontractors, in the performance of, or in connection with, any work required, contemplated or performed under the Contract.

■ The District cannot prevail on a contractual theory of indemnity. By written agreement, parties may provide for one party to indemnify another party against its own negligence. *See W.M. Schlosser Co. v. Maryland Drywall Co.,* 673 A.2d 647, 653 (D.C. 1996); *District of Columbia v. Royal,* 465 A.2d 367, 368–69 (D.C.1983). "An indemnity provision, however, 'should not be construed to permit an indemnitee to recover for his [or her] own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties.'" *Schlosser, supra,* 673 A.2d at 653 (quoting *United States v. Seckinger,* 397 U.S. 203, 211, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970)). In *Royal, supra,* we construed an indemnification provision which is identical to that set forth in Ebone's contract with the District. There, we rejected the District's contention that the language of the indemnification clause was "sufficiently broad so as to indemnify the District against liability based upon its own negligence." *Royal, supra,* 465 A.2d at 368. In rejecting the District's argument we said: "Where the District expects to shift the ultimate responsibility for its negligence to its contractors, such an intention should be plainly evident from the face of the contract."

---

7. The contract between Ebone and the District was introduced into evidence during the trial on the main claim.

*Id.* at 369. Nothing in the District's contract reflects an intention that Ebone should indemnify the District for the District's negligence. Therefore, the District is not entitled to contractual indemnity.

Furthermore, based on the record in this case, the District is not entitled to equitable indemnification. "In 'implied in law' ... or 'equitable' indemnity, the obligation is based on variations in the relative degree of fault of joint tortfeasors, and the assumption that when the parties are not *in pari delicto,* the traditional view that no wrongdoer may recover from another may compel inequitable and harsh results." *East Penn Mfg. Co. v. Pineda,* 578 A.2d 1113, 1127 n. 20 (D.C.1990) (citations omitted). In its cross claim pleading, the District claimed that in the event of a finding of negligence against it, its negligence would be "passive and secondary" and Ebone's negligence would be "the primary and active proximate cause of plaintiff's injuries and damages." Since Ebone was not adjudged a joint tortfeasor, the theory of equitable indemnity is unavailing to the District.

Accordingly, for the foregoing reasons, we affirm the $250,000 judgment of the trial court in behalf of Ms. Murtaugh in No. 97–CV–908. In No. 97–CV–1035, we affirm the trial court's judgment vacating and re-entering judgment against the District. Finally, in No. 97–CV–908, we affirm the trial court's judgment as to the District's cross claim.

*So ordered.*