JOHN SALONIA et al., Plaintiffs, v SAMSOL HOMES, INC., Defendant and Second Third-Party Plaintiff-Respondent. IRWIN MILLER et al., Second Third-Party Defendants-Appellants. (And Another Third-Party Action.)

Second Department, October 20, 1986

## APPEARANCES OF COUNSEL

*Gordon & Silber, P. C. (Peter P. Traub, Jr.,* and *David H. Sculnick* of counsel), for appellants.

*Kopff, Nardelli & Dopf (Scott F. Morgan* and *Joseph Lanni* of counsel), for respondent.

## OPINION OF THE COURT

LAWRENCE, J.

The question presented for our determination is whether the defendant second third-party plaintiff Samsol Homes, Inc., who settled the claims asserted against it by the plaintiffs in the main action, may maintain a claim for indemnification against the second third-party defendants Irwin Miller and Kings Highway Orthopedic Group to recover over for the damages allegedly caused by their acts of medical malpractice committed during the treatment of the injuries sustained by the plaintiff John Salonia, as a result of a fall upon a construction site owned by Samsol Homes, Inc. We conclude that the gravamen of Samsol's second third-party complaint is in the nature of a claim for contribution, and not indemnification. Since pursuant to General Obligations Law § 15-108 (c), the settlement of the main action precludes a claim for contribution, the second third-party complaint should be dismissed.

### I.

The pertinent facts are not in dispute.

On October 5, 1976, the plaintiff John Salonia (hereinafter Salonia), fell and injured his left leg while he was employed by a subcontractor at a construction site owned by the defendant second third-party plaintiff Samsol Homes, Inc. (hereinafter Samsol). Thereafter, Salonia was treated for his injuries by the second third-party defendant Irwin Miller (hereinafter Miller), a physician member of the second third-party defendant Kings Highway Orthopedic Group.

Salonia and his wife (asserting a derivative claim) subsequently commenced this action against Samsol, claiming, *inter alia,* that the "severe and permanent injuries" sustained by Salonia were caused "wholly and solely" by the negligence of Samsol. Specifically, it was alleged that Samsol had permitted wood to be placed across an opening to the basement and/or a stairwell leading to the basement at the construction site,

which gave a false impression of a solid wood flooring, so that when Salonia stepped on the wood, he fell through into the basement. Samsol then commenced two third-party actions. In the first third-party action, Samsol impleaded, among others, Salonia's employer. In the second third-party action against Miller and Kings Highway Orthopedic Group, it was alleged, in pertinent part, that if Salonia had sustained any injuries as a result of his accident, "said injuries were aggravated, compounded, made worse and possibly permanent through the negligence of" Miller and Kings Highway Orthopedic Group; and that if any judgment were recovered by the plaintiffs as against Samsol, then Samsol would be damaged thereby and each of the second third-party defendants would be responsible therefor "in whole or in part".

The second third-party action was severed from the original action and the first third-party action. Thereafter, the two latter actions were settled by the parties; Miller and Kings Highway Orthopedic Group were not parties to this settlement.

Miller and Kings Highway Orthopedic Group then moved for summary judgment dismissing the severed second third-party complaint on the ground that as a result of the settlement General Obligations Law § 15-108 precluded a claim for contribution by Samsol. In opposition to the motion, Samsol argued that the second third-party action set forth a cause of action for indemnification which was not barred by General Obligations Law § 15-108.

Special Term denied the motion for summary judgment on the ground that Samsol "may be entitled to indemnity from [Miller and Kings Highway Orthopedic Group] to the extent that their negligence caused further injuries to [Salonia]". Upon granting reargument of the motion, Special Term adhered to its original determination.

Miller and Kings Highway Orthopedic Group appeal. We now reverse.

## II.

As noted by Special Term, in construing the allegations in the second third-party complaint, "the court is concerned with the essence and not with nomenclature" of the action; the mere use of the term "indemnification" is insufficient to sustain such a claim (cf. *Rosado v Proctor & Schwartz*, 66 NY2d 21, 25; *County of Westchester v Becket Assoc.*, 102 AD2d

34, 47, *affd* 66 NY2d 642, *for reasons stated in opn by Justice Thompson at App Div).*

In evaluating the second third-party suit, a brief analysis is necessary concerning the liabilities and rights of Samsol, Miller and Kings Highway Orthopedic Group, who are successive and independent tort-feasors. Samsol, as the original tort-feasor, is liable not only for the injuries incurred by Salonia as a result of his fall, but also for any aggravation of those injuries by the alleged acts of medical malpractice committed by Miller and Kings Highway Orthopedic Group *(see, Hill v St. Clare's Hosp.,* 67 NY2d 72, 82, 83; *Derby v Prewitt,* 12 NY2d 100, 103, 105-106; *Milks v McIver,* 264 NY 267, 270). Conversely, however, the liability of Miller and Kings Highway Orthopedic Group is limited to the aggravation damages allegedly caused by their tortious acts *(see, Suria v Shiffman,* 67 NY2d 87, 98, *rearg denied* 67 NY2d 918; *Dubicki v Maresco,* 64 AD2d 645, 646). Nevertheless, while Samsol, Miller and Kings Highway Orthopedic Group are not joint, but successive and independent tort-feasors, "the malpractice coalesces with the original injury at that point and the two independent wrongs become concurrent causes of the ultimate result. Then the position of the independent tort feasors becomes in many respects analogous to the position of joint tort feasors" *(Matter of Parchefsky v Kroll Bros.,* 267 NY 410, 413-414). Specifically, under the circumstances of this case, it has been held that the right of "indemnity" *(Musco v Conte,* 22 AD2d 121, 124), or subrogation *(Matter of Parchefsky v Kroll Bros., supra)* exists in favor of the original tort-feasor, who has been held liable for all of the damages incurred by the injured party, as against the physician, but only for the damages caused by any acts of medical malpractice resulting from the treatment of the original injury *(see, Hill v St. Clare's Hosp., supra,* at p 83; *Matter of Parchefsky v Kroll Bros., supra,* at p 414; *Musco v Conte, supra,* at p 125).

We must now resolve whether this right to indemnity or subrogation with respect to aggravation damages is, in fact, a "claim for contribution", within the meaning of CPLR article 14, thereby warranting dismissal of the second third-party complaint, pursuant to General Obligations Law § 15-108 (c).

In the aftermath of *Dole v Dow Chem. Co.* (30 NY2d 143), which provided, in pertinent part, that the liabilities of joint tort-feasors should be equitably apportioned according to their respective degrees of fault, a new CPLR article 14 was enacted, and General Obligations Law § 15-108 was amended in

1974 (L 1974, ch 742). These statutes provide, in pertinent part, as follows:

"§ 1401. Claim for contribution

"Except as provided in section 15-108 of the general obligations law, two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought."

"§ 1404. Rights of persons entitled to damages not affected; rights of indemnity or subrogation preserved

"(a) Nothing contained in this article shall impair the rights of any person entitled to damages under existing law.

"(b) Nothing contained in this article shall impair any right to indemnity or subrogation under existing law."

"§ 15-108. Release or covenant not to sue * * *

"(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person."

This legislation was intended to clarify and otherwise resolve certain problems created by *Dole v Dow Chem. Co.* *(supra) (see,* Twentieth Ann Report of NY Judicial Conference, 1975, at 211-212). Of particular relevance, the judicial conference report noted at page 214 that CPLR 1401 was to be applied not only to " 'joint tortfeasors' " but also to " 'successive and independent tortfeasors' ", citing to *Musco v Conte* (22 AD2d 121, *supra*). In that case, this court, in an opinion by former Justice Hopkins, reinstated a third-party complaint similar to the second third-party complaint in this case. Therefore, such citation supports the contention of Miller and Kings Highway Orthopedic Group that Samsol's right to recover for aggravation damages caused by their alleged medical malpractice constitutes a claim for contribution within the meaning of CPLR article 14 *(cf. Hill v St. Clare's Hosp.,* 67 NY2d 72, 83, *supra*).

Further, in commenting upon CPLR 1404, the Twentieth Annual Report of the Judicial Conference noted, in pertinent part (at 222-223), that:

"[i]n keeping with the premise that *Dole* was intended essentially to modify the law of contribution, leaving much of the traditional common law of indemnity unchanged *(Rogers*

*v. Dorchester Associates,* 32 N.Y.2d 553, 565-66, (1973)), subdivision (b) of section 1404 states that in those factual situations in which the Court of Appeals would continue to apply the common law rules of indemnity (e.g. *Kelly v. Long Island Lighting Co.,* 31 N.Y.2d 25, 29 (1972); *Rogers v. Dorchester Associates,* 32 N.Y.2d 553, (1973)), nothing contained in this Article should be construed to preclude them from so doing.

"In addition, it is to be expected that whenever the existing common law rules of indemnity are applied to shift the entire financial responsibility from one tortfeasor to another, there is to be no subsequent claim for contribution under this Article. *Rogers v. Dorchester Associates,* 32 N.Y.2d 553, 566, (1973); see *Restatement (Second) of Torts* § 886A (4) (Tent. Draft No. 16, 1970); Uniform Contribution Among Tortfeasors Act § 1(f) (rev. 1955); Uniform Contribution Among Tortfeasors Act § 6 (1939) * * *

"To the extent that one party possesses rights in accordance with the laws of subrogation and the existence of those rights would not be inconsistent with the purpose and intent of this Article, those rights should continue to be enforceable."

What types of indemnification claims are still viable since *Dole v Dow Chem. Co. (supra)* (essentially codified in CPLR art 14), was considered by the Court of Appeals in *D'Ambrosio v City of New York* (55 NY2d 454). In that case, the court was asked to reevaluate the "special benefit" rule, which "allow[ed] a municipality, charged with the duty of maintaining its sidewalks in a reasonably safe condition, to shift liability [via a claim for indemnification] to the abutting landowner, where the cause of plaintiff's injuries [was] the failure of the landowner to reasonably maintain a sidewalk installation constructed for the special use and benefit of his property" *(D'Ambrosio v City of New York, supra,* at p 457). In holding that "the 'special benefit' rule [was] no longer available to shift entirely such liability to the landowner; rather, the liability [was] to be apportioned between the municipality and the landowner, based upon their respective degrees of fault" *(D'Ambrosio v City of New York, supra,* at pp 457-458), Judge Gabrielli, writing for a majority of the court, set forth the pertinent rules concerning contribution and indemnification and the effect of *Dole v Dow Chem. Co. (supra)* upon those rules as follows:

"It was once the rule in this State that contribution among joint tort-feasors could not be had. The reason for this com-

mon-law rule barring apportionment was the belief that the courts should not participate in adjusting the relative rights of wrongdoers *(Dole v Dow Chem. Co.,* 30 NY2d 143, 147, *supra)* * * *

"Notwithstanding the rigid rules regarding contribution rights among joint tort-feasors, a common-law right of indemnification existed, allowing one who was compelled to pay for the wrong of another to recover from the wrongdoer the damages paid to the injured party *(Westchester Light. Co. v Westchester County Small Estates Corp.,* 278 NY 175; *Oceanic Steam Nav. Co. v Compania Transatlantica Espanola,* 134 NY 461). Thus, for example, where the master had been held liable for the tort of his servant, on a theory of *respondeat superior,* but the master was himself free from wrong, the master was entitled to indemnification from his servant *(Opper v Tripp Lake Estates,* 274 App Div 422, affd 300 NY 572). In the classic indemnification case, the one entitled to indemnity from another had committed no wrong, but by virtue of some relationship with the tort-feasor or obligation imposed by law, was nevertheless held liable to the injured party.

"Over the years, the doctrine of 'implied indemnification' was extended in response to the potentially harsh results of the inflexible rules barring contribution among joint tort-feasors. Thus, one who was cast in damages for negligence could, if his negligence were merely 'passive', nevertheless shift his liability to the tort-feasor whose negligence was considered 'active'. The 'actively negligent tort-feasor is considered the primary or principal wrongdoer and is held responsible for his negligent act not only to the person directly injured thereby, but also to any other person indirectly harmed by being cast in damages by operation of law for the wrongful act' *(McFall v Compagnie Maritime Belge [Lloyd Royal] S.A.,* 304 NY 314, 328; see, also, *Tipaldi v Riverside Mem. Chapel,* 298 NY 686, affg 273 App Div 414). One who was himself actively negligent could not, of course, receive the benefit of this doctrine; it was available only to shift full liability from the secondary to the primary wrongdoer, and its availability depended upon the level of culpability of the one seeking indemnity *(Bush Term. Bldgs. v Luckenbach S.S. Co.,* 9 NY2d 426; *Jackson v Associated Dry Goods Corp.,* 13 NY2d 112). The inquiry became primarily a question of the degree of fault, or the 'factual disparity between the delinquency' of the several tort-feasors *(McFall v Compagnie Maritime Belge [Lloyd Royal] S.A.,* 304 NY 314, 330, *supra).* Such efforts to ameliorate the effects of

the bar to contribution were far from complete, however, since the 'active-passive' terminology was not easily applied. Moreover, the result of its application was complete, not ratable, recovery by the less negligent tort-feasor against the one guilty of 'active' negligence.

"Against this background, *Dole v Dow Chem. Co. (supra)*, was decided, drastically changing the law of this State regarding the apportionment rights of joint tort-feasors. *Dole* rejected the unpredictable result of attempting to shift entire liability based upon the theory of whose negligence was the greater, and adopted the more realistic approach of holding joint tort-feasors liable according to their respective degrees of fault * * *

"In later cases, we clarified the scope of our holding in *Dole*. In *Rogers v Dorchester Assoc.* (32 NY2d 553), we explained that the rule of apportionment enunciated in *Dole* did not abrogate basic principles of 'common-law indemnification between vicariously liable tort-feasors and tort-feasors guilty of the acts or omissions causing the harm. In short, the apportionment rule applies to those who in fact share responsibility for causing the accident or harm, and does not extend further to those who are only vicariously liable, as the employer of a negligent employee, the owner of a motor vehicle operated by a negligent driver, or * * * the owner of a building who contracts with an independent contractor exclusively responsible for maintenance of the building or parts of it' *(id.,* at pp 565-566). Thus, where one is held liable solely on account of the negligence of another, indemnification, not contribution, principles apply to shift the entire liability to the one who was negligent (see, also, *Logan v Esterly,* 34 NY2d 648)" *(D'Ambrosio v City of New York, supra,* at pp 460-462).

Applying the analytic framework as set forth in *D'Ambrosio v City of New York (supra),* and paraphrasing to the facts of this case, it is clear that the right of indemnity or subrogation available to "a defendant whose wrongful act resulted in injury aggravated by the negligence of a treating physician" *(Musco v Conte,* 22 AD2d 121, 125, *supra),* was not "a recognition of a common-law right to indemnification", in that the original tort-feasor was entitled to recover because it had been cast in liability solely for the physician's negligence but rather "one application of the doctrine permitting the secondary wrongdoer, notwithstanding his own negligence, to shift his liability to a wrongdoer guilty of a greater degree of negligence" *(D'Ambrosio v City of New York, supra,* at p 463). As

noted, if found to be negligent, Samsol, Miller and Kings Highway Orthopedic Group would have breached their respective duties to Salonia resulting in his ultimate injuries *(see, Matter of Parchefsky v Kroll Bros.,* 267 NY 410, 413-414, *supra).* Specifically, Samsol's liability "is * * * the product of the familiar rule that a wrongdoer is responsible for the reasonably foreseeable consequences of his tortious act, including the negligent conduct of others" *(Derby v Prewitt,* 12 NY2d 100, 106, *supra; see, Milks v McIver,* 264 NY 267, 269-270, *supra).* Accordingly, Samsol "is not being compelled to pay for the wrong of another; it is simply being held liable for its own failure to exercise reasonable care" *(D'Ambrosio v City of New York, supra,* at p 463). Moreover, the physician's obligation runs, not to the original tort-feasor, but to his or her patient; the physician has not undertaken any obligation to treat the patient for the benefit of the original tort-feasor. Therefore, the shifting of the original tort-feasor's liability for the aggravation of damages to the negligent physician "was not the classic form of indemnity; rather, it was a recognition that [the original tort-feasor's liability] was only secondary" with respect to the aggravation damages caused by the negligent acts of the physician *(see, D'Ambrosio v City of New York, supra,* at pp 463-464; *Musco v Conte, supra,* at p 124).

Accordingly, we conclude that Samsol's second third-party complaint solely alleges a "claim for contribution" within the meaning of CPLR article 14, warranting dismissal of the second third-party action, pursuant to General Obligations Law § 15-108 (c) *(see, e.g., Rosado v Proctor & Schwartz,* 66 NY2d 21, 24-25, *supra).*

Samsol's reliance on *Heinsohn v Putnam Community Hosp.* (65 AD2d 767) and *Felice v St. Agnes Hosp.* (65 AD2d 388) is misplaced. In both those cases, this court held, in pertinent part, that the defendant hospitals had pleaded valid claims for indemnification since it was alleged, *inter alia,* that their liability, if any, to the injured plaintiffs, would be based *solely* on their derivative or vicarious liability for the affirmative negligent acts of the codefendant physicians.

In this case, since Samsol's liability to the injured plaintiff is not based solely on the acts of Miller and Kings Highway Orthopedic Group, no valid claim for indemnification exists *(cf. D'Ambrosio v City of New York, supra; Garrett v Holiday Inns,* 58 NY2d 253, 261-262). The second third-party complaint has merely alleged "a basis for proportionate liability on the part of" Miller and Kings Highway Orthopedic Group *(see,*

*Garrett v Holiday Inns, supra,* at p 264; *see also, Musco v Conte, supra).*

Samsol, having bought "[its] peace by [settling the original action, terminated] completely, [its] rights and liabilities in the action" *(McDermott v City of New York,* 50 NY2d 211, 220, *rearg denied* 50 NY2d 1059). Accordingly, the second third-party defendants' motion to dismiss the second third-party complaint should have been granted.

NIEHOFF, J. P., KUNZEMAN and KOOPER, JJ., concur.

Ordered that the appeal from the order dated October 14, 1983, is dismissed. That order was superseded by the order dated June 27, 1984, made upon reargument.

Ordered that the order dated June 27, 1984, is reversed insofar as appealed from, on the law, the order dated October 14, 1983 is vacated, and, upon reargument, the second third-party defendants' motion is granted and the second third-party complaint is dismissed.

Ordered that the second third-party defendants are awarded one bill of costs.