**GROUP HEALTH ASSOCIATION, INC., Appellant,**

v.

**DISTRICT OF COLUMBIA GENERAL HOSPITAL, Appellee.**

No. 87–181.

District of Columbia Court of Appeals.

Argued March 22, 1988.
Decided April 29, 1988.

Kenneth W. Curtis, Arlington, Va., for appellant.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, for appellee. Frederick D. Cooke, Jr., Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Martin B. White, Asst. Corp. Counsel, Washington, D.C., on the brief.

Before FERREN, TERRY and STEADMAN, Associate Judges.

TERRY, Associate Judge:

This is an appeal from an order of the Superior Court dismissing with prejudice a complaint filed by Group Health Association (GHA) against the District of Columbia,[1] on the ground that the dismissal of an earlier third-party complaint which GHA had filed against the District in another action[2] was *res judicata.* We agree that the complaint in this case was barred by *res judicata,* and hence we affirm the order of dismissal.

I

In June 1981 Alphonso Thomas began having chest pains and several times sought treatment at a GHA facility. On July 12 Thomas again experienced chest pains and went to District of Columbia General Hospital ("D.C. General"), where he was given nitroglycerin. Later that same day he informed GHA that he had been treated at D.C. General. On July 13, after another examination at GHA, he was admitted to George Washington University Hospital. The next day, July 14, while still a patient at George Washington University Hospital, Thomas suffered a disabling heart attack.

Almost three years later, on June 21, 1984, Thomas filed an action for malpractice against GHA in the Superior Court, and in the same action his wife sued GHA for loss of consortium. *Thomas v. GHA,* Civil Action No. 7753–84. Counsel for GHA knew by October 17, 1984, at the latest, that Thomas had visited D.C. General two days before his heart attack and had there received nitroglycerin for his chest pains. This knowledge was revealed in a "Memorandum for Status Hearing" filed on that date by GHA. On October 17, 1985, exactly one year later, GHA's expert opined in a deposition that D.C. General's negligent treatment of Thomas could have caused or contributed to Thomas' heart attack.

On January 8, 1986, GHA sent the Mayor a notice of claim pursuant to D.C. Code § 12–309 (1981), and on January 23, in *Thomas v. GHA,* GHA moved for leave to file a third-party complaint against the District of Columbia[3] for contribution or indemnity. That request was granted. The District then moved to dismiss the third-party complaint on the ground that the notice sent on January 8 was not timely under section 12–309.[4] Judge Wolf grant-

---

1. The complaint actually named District of Columbia General Hospital as the defendant. The hospital, however, is an agency of the District of Columbia government and is thus not suable in its own name. *Braxton v. National Capital Housing Authority,* 396 A.2d 215, 216–217 (D.C. 1978). Since the District is the real party in interest, we shall regard it as the defendant-appellee.

2. Appellant also named the hospital as the third-party defendant in the earlier case. See note 1, *supra.*

3. See note 1, *supra.*

4. D.C. Code § 12–309 provides in pertinent part:
    An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was

ed the motion and dismissed the third-party complaint, holding that GHA should have notified the Mayor of its claim for contribution within six months from the date on which the Thomases had originally filed suit, which was June 21, 1984. GHA never appealed from Judge Wolf's ruling.

Soon thereafter GHA settled Mr. and Mrs. Thomas' claim for $625,000.[5] GHA then filed the instant action against the District for contribution, asking for $312,500, half the amount of the settlement. The District moved to dismiss the complaint on the ground of *res judicata,* arguing that GHA's claim was barred by Judge Wolf's order dismissing the earlier third-party complaint. Judge Mitchell agreed with the District and dismissed GHA's complaint for contribution. This appeal followed.

## II

▮ Judge Wolf's dismissal of GHA's third-party complaint against the District in *Thomas v. GHA* bars GHA's subsequent suit against the District for contribution. That dismissal, based on section 12–309, *see Gwinn v. District of Columbia,* 434 A.2d 1376, 1377–1378 (D.C.1981), was a final adjudication on the merits of the third-party complaint. *See Bazata v. National Insurance Co.,* 400 A.2d 313 (D.C.1979); Super.

Ct.Civ.R. 41(b), last sentence. Judge Wolf specifically rejected GHA's argument that the notice period did not begin to run until GHA itself suffered an injury in the form of a judgment against it in favor of Mr. and Mrs. Thomas,[6] holding instead that the time began to run from the date on which the Thomases' suit was filed.[7] Because GHA chose not to appeal from Judge Wolf's decision, it was final and binding on the parties in the instant case.

▮ GHA's attempt to characterize the original third-party complaint against the District as simply raising the issue of liability, separate from the issue of contribution raised in its new complaint, draws a false distinction. A claim for contribution will lie only if the defendant is liable, concurrently with the original defendant, to the plaintiff in the original suit. *See, e.g., Bair v. Bryant,* 96 A.2d 508, 510 & n. 4 (D.C. 1953). Indeed, GHA's third-party complaint, dismissed by Judge Wolf without any appeal by GHA, alleged that the District's negligence was the sole or contributing cause of Thomas' injuries, and asked for "contribution and/or indemnity" from the District. GHA's subsequent suit for contribution, from which this appeal arises, alleged that the District's negligence directly caused Thomas' injuries, and on that basis GHA sought contribution of one-half

---

sustained, the claimant, his agent, or attorney has given notice in writing to the [Mayor] of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

5. GHA invited the District to join in the settlement negotiations with the Thomases, but the District declined to do so.

6. GHA's argument before Judge Wolf appears to be consistent with the majority of court decisions on the subject. *See, e.g., Minneapolis, St.P. & S.S.M.R.R. v. City of Fond du Lac,* 297 F.2d 583, 586 (7th Cir.1961) (applying Wisconsin law); *Roehrig v. City of Louisville,* 454 S.W.2d 703 (Ky.Ct.App.1970); *Cotham v. Board of County Commissioners,* 260 Md. 556, 566–567, 273 A.2d 115, 120–121 (1971); *Valstrey Service Corp. v. Board of Elections,* 2 N.Y.2d 413, 141 N.E.2d 565, 161 N.Y.S.2d 52 (1957); *Thomas v. Przbylski,* 83 Wash.2d 118, 516 P.2d 207 (1973). Minnesota, however, takes the position that the notice period begins to run from the date of the original plaintiff's injury. *Hansen v. D.M. & I.R.*

*Ry.,* 292 Minn. 503, 195 N.W.2d 814 (1972); *American Automobile Insurance Co. v. City of Minneapolis,* 259 Minn. 294, 107 N.W.2d 320 (1961). The Colorado rule is that the notice period begins to run when the original defendant discovers the third-party defendant's alleged negligence. *Brady v. City and County of Denver,* 181 Colo. 218, 508 P.2d 1254 (1973).

There is no controlling District of Columbia precedent on this issue. In *Keleket X–Ray Corp. v. United States,* 107 U.S. App.D.C. 138, 140, 275 F.2d 167, 169 (1960), the court held that "Keleket's claim to contribution [under the Federal Tort Claims Act] did not accrue before Keleket had been sued by Slater [the original plaintiff]." *Keleket,* however, involved a statute of limitations, not a notice statute, and is therefore not dispositive of the notice question (though it may be persuasive; *see Roehrig, supra,* 454 S.W.2d at 704).

7. Judge Wolf relied on an unpublished opinion by another judge in an earlier case, *Rendelman v. American University,* Civil Action No. 11497–75 (D.C.Super.Ct. April 7, 1978) (Greene, C.J.).

of the $625,000 settlement that GHA paid to the Thomases. These complaints are virtually identical, presenting the same claim; hence the second one is barred by *res judicata. Rhema Christian Center v. District of Columbia Board of Zoning Adjustment,* 515 A.2d 189, 192–193 (D.C. 1986).

 GHA's arguments on the merits are all addressed to Judge Wolf's decision that the notice was untimely under D.C. Code § 12–309. But the merits of Judge Wolf's decision are not now and have never been before this court for review, since GHA never appealed from Judge Wolf's order, and it is obviously too late now to do so. All that is before us on this appeal is the order of Judge Mitchell dismissing GHA's suit against the District for contribution on the ground of *res judicata.* That order was plainly correct, and accordingly it is

*Affirmed.*[8]

---

**8.** We have been advised by GHA's counsel that, after oral argument in this appeal, GHA filed with Judge Wolf a motion under Super.Ct.Civ.R. 60(b)(6) to "clarify" his dismissal of the third-party complaint in *Thomas v. GHA.* We see no reason to delay our decision in this appeal pending Judge Wolf's ruling on that motion. If Judge Wolf denies it, the litigation will be at an end, subject to any appeal from the denial that GHA may bring if it chooses to do so. If he grants it, then GHA may go back to Judge Mitchell with a request for appropriate relief. *See Adams v. Jonathan Woodner Co.,* 475 A.2d 393, 397 (D.C.1984). We express no opinion here on the merits of GHA's Rule 60(b)(6) motion.