**DISTRICT OF COLUMBIA, Appellant,**

v.

**WASHINGTON HOSPITAL CENTER, Appellee.**

No. 94–CV–319.

District of Columbia Court of Appeals.

Reargued En Banc June 10, 1997.
Decided Dec. 30, 1998.

Edward E. Schwab, Assistant Corporation Counsel, with whom Vanessa Ruiz, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

Joseph S. Crociata, Washington, DC, with whom Martha Ann Knutson, Fallston, MD, was on the brief, for appellee.

Before WAGNER, Chief Judge, TERRY, STEADMAN, SCHWELB, FARRELL and REID, Associate Judges, and GALLAGHER, and KING,* Senior Judges.

WAGNER, Chief Judge:

The principal issue raised by this appeal is whether a settling defendant in an automobile negligence case has a right to equitable contribution or indemnity from a non-party hospital which allegedly aggravated plaintiff's initial injuries where the settling party obtained a release from the injured party only for itself, its officers, agents and employees. We conclude that there is no right of contribution or indemnity in favor of the settling party under the circumstances presented in this case.

## I.

### Factual and Procedural Background

Shiela Bringier, while carrying her three year old child across the street, was struck by an automobile involved in a high speed chase with a Metropolitan Police officer. Ms. Bringier, individually and on behalf of her minor child (the Bringiers), filed a suit for damages for personal injuries against the District of Columbia (District) alleging that the accident was proximately caused by the negligence of the police officer.[1] Prior to trial, the District settled the lawsuit with the Bringiers with the entry of a consent judgment, under the terms of which the Bringiers released the District from all claims arising out of the incident that were the subject of the lawsuit, including any claims for contribution or indemnity that third parties might have against the District. Appellee, the Washington Hospital Center (WHC or the Hospital), was not a party to the Bringier action.

Subsequently, the District filed this action against WHC for all or a contributable por-

tion of the settlement, alleging that the hospital's medical negligence exacerbated the injuries that Ms. Bringier sustained in the accident and that its settlement of the lawsuit covered that portion of Ms. Bringier's claim. WHC moved for judgment on the pleadings pursuant to Super. Ct. Civ. Rules 12(c) and 56, attaching as exhibits to its motion copies of the complaint, the consent motion for judgment and the consent judgment from the Bringier action.[2]

Relying primarily on this court's decision in Hall v. George A. Fuller Co., 621 A.2d 848 (D.C.1993), WHC argued in its motion that contribution is available only among joint tortfeasors and that the District, by settling the claim, had made impossible the determination of joint or any other liability. In its opposition, the District sought to distinguish Hall in at least two ways. First, it pointed out that in Hall, each of the cross-claiming co-defendants had settled and bought his peace from plaintiff, while the District allegedly bought the peace of WHC, in addition to its own, in the Bringier action. Second, it contended that unlike the injuries sustained by the victim in Hall, the injury caused by WHC's medical negligence was separate and distinct from the injury that Ms. Bringier sustained in the automobile accident, and therefore, the District's liability in the Bringier action would not determine or affect WHC's liability for medical negligence. The trial court granted WHC's motion to dismiss without opinion, indicating that it had considered the motion and the District's opposition thereto.

On appeal, the District argued before the division that the trial court erred in dismissing its action for contribution because its settlement covered the entire liability, and WHC's negligence caused a substantial portion of the damages covered by the settlement of the Bringier case. WHC challenged

---

* Judge King was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on November 23, 1998.

1. The Bringiers also sued one Curtis Whitfield whose vehicle collided with the suspect's vehicle during the chase. See Shiela A. Bringier v. District of Columbia and Curtis Whitfield, Civil Action No. 90–02910.

2. When matters outside the pleadings are presented and not excluded in a motion made under Super. Ct. Civ. R. 12(c), the motion may be disposed of by way of summary judgment under Super. Ct. Civ. R. 56. Super. Ct. Civ. R. 12(c); Foretich v. CBS, Inc., 619 A.2d 48, 55 (D.C.1993).

the District's contentions that it had paid the entire liability and settled any claim that Ms. Bringier might have had against the hospital. WHC also contended that the District's settlement of the Bringier claim extinguished any right it might have for equitable contribution. The division majority held that the release obtained by the District in the Bringier case did not discharge any liability that WHC might have to the Bringiers, and therefore, the District had no cause of action for contribution against WHC. Further, relying on *Hall, supra,* and principles underlying this ·jurisdiction's contribution scheme, the division majority also concluded, under the particular facts, that the District "extinguished the liability upon which equitable contribution is based and that it is not entitled equitably to contribution from WHC to reduce the amount it paid in settlement of the claim against it." Acknowledging the support for the decision found in *Hall* for the latter proposition, but apparent inconsistencies with some other cases in this jurisdiction, the District petitioned for rehearing en banc, which we granted.

## II.

The District argues that it is entitled to contribution from WHC toward the amount of the settlement of the lawsuit with Ms. Bringier because it discharged the entire liability, including WHC's liability for alleged negligent medical treatment which aggravated the initial injuries Ms. Bringier sustained in the automobile accident with the District's agent. It is the District's theory that it should be considered a joint tortfeasor with WHC, and therefore entitled to equitable contribution for that portion of the settlement payment in excess of its fair share of the common liability. We consider first whether a right of contribution exists in the circumstances outlined.

3. As will be indicated, *infra,* this jurisdiction does not recognize comparative negligence, and contribution among joint tortfeasor is *pro rata.* We use the word "contribution" in this sense in this opinion.

4. The RESTATEMENT provides on this issue:

### A. *Contribution*

■■■■ Contribution is one of several theories used to apportion damages among tortfeasors to an injured party. In this jurisdiction, the law pertaining to the right of contribution among joint tortfeasors has been established by case precedent rather than by statute. *Lamphier v. Washington Hosp. Ctr.,* 524 A.2d 729, 733 (D.C.1987). Under these precedents, it is now well settled that there is a right of equal contribution among joint tortfeasors.[3] *Hall, supra,* 621 A.2d at 850; *Early Settlers Ins. Co. v. Schweid,* 221 A.2d 920, 923 (D.C.1966). The philosophy behind the allowance of contribution is that "as each tort-feasor was at fault in bringing about the injury to the innocent party, then in justice each tort-feasor should share his part in the burden of making the injured party whole again." *Martello v. Hawley,* 112 U.S.App. D .C. 129, 131, 300 F.2d 721, 723 (1962) (citing *George's Radio, Inc. v. Capital Transit Co.,* 75 U.S.App. D.C. 187, 126 F.2d 219 (1942)). The contribution remedy is a way of securing "fairness to joint tortfeasors (by distributing the plaintiff's losses equitably among all wrongdoers) and deterrence (by ensuring that all parties responsible for the injuries will share in the cost of the offending conduct)." *Hall,* 621 A.2d at 850 n. 3 (citation omitted). Since we have not recognized degrees of negligence in this jurisdiction, contribution is apportioned equally among all tortfeasors. *Early Settlers,* 221 A.2d at 923. Thus, "the fact that the negligence of one may be greater than that of another ... does not change the method of equally apportioning contribution, as the law of this jurisdiction does not recognize degrees of negligence." *Id.*

■■■■ An essential prerequisite for entitlement to contribution is that the parties be joint tortfeasors in the sense that their negligence concurred in causing the harm to the injured party.[4] *Washington v. Washington*

Except as stated in Subsections (2), (3), and (4), when two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, even though judgment has not been recovered against all or any of them.

*Hosp. Ctr.,* 579 A.2d 177, 187 (D.C.1990) (citing *Group Health Ass'n v. District of Columbia General Hosp.,* 540 A.2d 1104, 1106 (D.C. 1988)); *Early Settlers, supra,* 221 A.2d at 923. "The District of Columbia long ago abandoned the common-law requirement that the defendants have engaged in concerted action to be liable as joint tortfeasors." *Hill v. McDonald,* 442 A.2d 133, 137 n. 3 (D.C. 1982) (citing *McKenna v. Austin,* 77 U.S.App. D.C. 228, 231, 134 F.2d 659, 662 (1943)). "The law recognizes that there may not be a single proximate cause for every injury; several causes may combine to produce the harm." *R. & G. Orthopedic Appliances v. Curtin,* 596 A.2d 530, 544 (D.C.1991) (citing *Hill,* 442 A.2d at 137). Thus, to be joint tortfeasors, it is sufficient if their independent acts combined to cause a single injury. *See Early Settlers,* 221 A.2d at 923; *Cokas v. Perkins,* 252 F.Supp. 563, 565 (D.D.C.1966) (citations omitted). A party who is the sole legal cause of a plaintiff's injuries is not entitled to contribution. *See Berg v. Footer,* 673 A.2d 1244, 1248 (D.C. 1996).

 In this case, in opposition to the motion to dismiss, the District acknowledged that it is not a joint tortfeasor with WHC "in the classic sense." It further conceded in its opposition, as it did in its complaint against WHC, that the injuries allegedly caused Ms. Bringier by WHC's negligence are separate and distinct from those she sustained in the automobile accident. Thus, we do not deal here with joint tortfeasors, each of whom would be liable to plaintiff for the full amount of the injuries. *See Lamphier, supra,* 524 A.2d at 732; *McKenna, supra,* 77 U.S.App.

D.C. at 233, 134 F.2d at 664. To be sure, the initial wrongdoer can be held liable to the injured party for the whole loss, including aggravation of the injuries due to subsequent medical negligence. *Lance v. United States,* 70 F.3d 1093, 1095 (9th Cir.1995); *Cokas, supra,* 252 F.Supp. at 565 (citing *Balancio v. United States,* 267 F.2d 135, 137 (2d Cir.), *cert. denied,* 361 U.S. 875, 80 S.Ct. 139, 4 L.Ed.2d 114 (1959) (other citations omitted)).[5] However, we have said that " 'it would defy reason to hold the physician liable for injuries caused by the original wrongdoer which were not the consequences of his own carelessness ....' " *Lamphier,* 524 A.2d at 732 n. 2 (citing *Kyte v. McMillion,* 256 Md. 85, 259 A.2d 532, 541 (Md.1969) (quoting from *Derby v. Prewitt,* 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556 (N.Y.1962))). There is no mutuality of responsibility between them. Thus, in such circumstances, successor tortfeasors are not jointly and severally liable for the whole loss, and thereby entitled to contribution among each other. *See Early Settlers, supra,* 221 A.2d at 923.

Actually, we are dealing here with successive tortfeasors. There are some courts which have recognized the right of an initial tortfeasor to contribution from medical treatment personnel. *See, e.g., Joiner v. Diamond M Drilling Co.,* 688 F.2d 256, 262, 263 (5th Cir.1982); *Radford–Shelton & Associates Dental Laboratory, Inc. v. St. Francis Hospital, Inc.,* 569 P.2d 506, 511 (Okl.App. 1977). However, in *Joiner,* the fact that the successive tortfeasors' negligence concurred in causing a *single* harm and a statutory definition supported the contribution theory. *Id.* at 263.[6] In that respect, the present case

RESTATEMENT (SECOND) OF TORTS § 886A (1) (1977). Subsections (2), (3), and (4) except respectively tortfeasors who have discharged less than the entire claim, those who have intentionally caused the harm, and those with rights of indemnity against the others. *Id.* § 886A (2), (3), and (4).

5. The initial tortfeasor's responsibility for aggravation of the initial injury by negligent medical treatment is based upon traditional tort causation principles. *See Lance, supra,* 70 F.3d at 1095. "The rationale behind this rule is an assumption that medical negligence aggravating the original injury is foreseeably within the scope of the risk created by the original tortious conduct." *Cokas, supra,* 252 F.Supp. at 565.

6. In *Joiner,* the widow of a worker injured at sea sued the owner and manufacturer of the vessel on which he was injured. The seaman was treated by a private physician for his injuries and died six days after the accident. 688 F.2d at 258–59. The owner and manufacturer filed third party complaints against the physician alleging that it was his negligence in failing to diagnose and treat the seaman's skull fracture and spinal meningitis which caused the seaman's death. *Id.* at 259. Joiner's widow settled her claims with the shipowner and manufacturer. *Id.* Since each of the remaining parties was allegedly liable for the death of the seaman and responsible for total reparations, the court determined that they were "solidary debtors" within the meaning of the

differs from *Joiner* in that there is no claim here that the District and WHC are responsible for total damages to Ms. Bringier nor any controlling statute authorizing contribution under the circumstances. In *Radford–Shelton*, the court based its decision upholding contribution upon restitution principles. 569 P.2d at 510. Concerned that the negligent medical attendant who aggravated the victim's initial injury would be unjustly benefited if the initial tortfeasor alone were required to pay, the court concluded that

> [a]ffording a right of contribution to the initial tortfeasor prevents an unjust enrichment on the part of the subsequent tortfeasor. And it gives effect to the principle that everyone is responsible for his own wrong, without confusing previous notions about the remedies of subrogation or indemnity.

*Id.* 569 P.2d at 511.[7]

Other courts have rejected such contribution claims among successive tortfeasors principally on the basis that the initial tortfeasor and the medical personnel treating the victim are not joint tortfeasors, typically a prerequisite to contribution among tortfeasors. *See, e.g., United States Lines, Inc. v. United States,* 470 F.2d 487, 491 (5th Cir. 1972); *Bost v. Metcalfe,* 219 N.C. 607, 14 S.E.2d 648, 652 (N.C.1941); *see also Wilson v. Krasnoff,* 560 A.2d 335, 339–41 (R.I.1989); *New Milford Bd. of Educ. v. Juliano,* 219 N.J.Super. 182, 530 A.2d 43, 44 (N.J.Super.1987). In *United States Lines,* United sued the government for contribution or indemnity for a settlement it made with an injured seaman on the theory that the injuries were caused by the negligence of the U.S. Public Health Service (government physicians) which failed to provide competent treatment to the injured seaman. 470 F.2d at 489. The court rejected the contribution theory, concluding that the parties were not joint tortfeasors between whom a claim for contribution would lie. *Id.* at 491. In so holding, the court pointed out that

> [t]he parties did not act in concert so as to produce a single injury. There were two separate, non-concurrent wrongs, the injury received aboard ship at sea and the alleged aggravation by government physicians in the treatment thereof. Neither of the parties ... had anything to do with both torts.

*Id.* Thus, the court held that since there is no traditional joint tortfeasor relationship between the original tortfeasor who causes injury to the victim and the physician who subsequently aggravates it, under Georgia law, contribution is not allowed. *Id.* at 491–92.

In *Bost, supra,* plaintiff, R.F. Bost, Jr., instituted an action against Metcalfe to recover damages for personal injuries sustained when their automobiles were involved in an accident. 14 S.E.2d at 650. Metcalfe filed a counterclaim for damages against Bost for his own personal injuries sustained in the accident. *Id.* Bost then brought into the action, as a third party defendant, the physician who treated Metcalfe for his injuries seeking to have him adjudged a joint tortfeasor. *Id.* Bost argued that the physician was primarily liable and that he was only secondarily liable for Metcalfe's injuries in that the doctor failed to take x-rays and to diagnose properly Metcalfe's condition. *Id.* at 651. The court concluded that "[a] party whose negligent conduct causes an injury and the physician who negligently treats the injury thus inflicted, thereby aggravating the damages flowing from the original injury, are not joint tort-feasors." *Id.* at 652 (citations omitted). The court reasoned that there was no concert of action between them and that their negligent acts did not concur to produce a single, indivisible injury. Therefore, the

Louisiana statute allowing contribution among them. *Id.* at 262–63.

7. In *Radford–Shelton*, Radford–Shelton's employee was injured in an explosion and subsequently treated for multiple injuries, including an injury to her right hand which was later operated on at St. Francis Hospital. 569 P.2d at 507. Radford–Shelton filed a third-party action against the hospital for contribution, indemnity or subro-

gation for any damages attributable to the hospital's negligence in aggravating the employee's injuries. *Id.* at 508. After examining the shortcomings of each theory to effect an equitable result, the court determined that contribution is the most appropriate basis for equitably apportioning the liability between parties whose independent acts caused the injuries. *Id.* at 510.

court held that plaintiff was not entitled to contribution. *Id.*

 The denial of contribution rights among tortfeasors whose negligence is successive and independent is consistent with the contribution scheme which has developed in this jurisdiction. The allowance of contribution under our rules is premised upon each tortfeasor being responsible for a single injury and sharing equally in making the injured party whole. *Martello, supra,* 112 U.S.App. D.C. at 131, 300 F.2d at 723. Where each tortfeasor causes a separate and distinct injury to the victim, there is no basis for allowing one to recoup a proportionate share from the other for harm to which he or she did not contribute. *See Lamphier, supra,* 524 A.2d at 732 n. 2 (citation omitted). Contribution among them in equal shares in accordance with our contribution rules would not be fair or feasible.[8] To the extent that the District's claim is for contribution for only that portion of the damages associated with medical negligence, it appears to seek apportionment of liability based on comparative negligence principles. Apportionment based on comparative negligence is contrary to the contribution rules which have developed through our precedents. *See Early Settlers, supra,* 221 A.2d at 923 (citing *Warner v. Capital Transit Co.,* 162 F.Supp. 253, 255 (D.D.C.1958)). Therefore, we agree with those jurisdictions which hold that the initial tortfeasor and the medical attendant who aggravates the victim's injuries through negligent treatment are not joint tortfeasors, and therefore are not entitled to contribution.

Here, Ms. Bringier's cause of action against the District arose out of an automobile accident, while the hypothetical cause of action of Ms. Bringier against WHC would be grounded upon medical negligence. Thus, the District and WHC engaged in no concurrent tortious action which caused Ms. Bringier's injury. Moreover, their independent torts did not combine to produce a single harm. Rather, it was the District's theory in the trial court that the injuries caused Ms. Bringier by WHC's negligence were separate and distinct from those caused by the automobile accident. Since the District and WHC are not joint tortfeasors whose tortious conduct concurred in causing an indivisible harm, it is not entitled to recover under a contribution theory. *See Washington, supra,* 579 A.2d at 187.

## B. *Indemnity*

 There are other theories under which the right to recovery has been allowed for one who has discharged the liability of another. One such theory is indemnity for which we have accepted the following formulation:

> Indemnity is a shifting of responsibility from the shoulders of one person to another; and the duty to indemnify has been recognized in cases where the equities have supported it. A court's view of the equities may have been based on the relation of the parties to one another, and the consequent duty owed; or it may be because of a significant difference in the kind or quality of their conduct.

*R. & G. Orthopedic Appliances, supra,* 596 A.2d at 545 (quoting *East Penn Mfg. Co. v. Pineda,* 578 A.2d 1113, 1128 n. 20 (1990) (quoting W. PROSSER & R. KEETON, THE LAW OF TORTS, § 51 at 344 (1984))). Indemnity is a form of restitution. *East Penn,* 578 A.2d at 1127. It involves general-

---

8. In this jurisdiction, where there is contribution among joint tortfeasors, damages are apportioned equally among them. *R. & G. Orthopedic Appliances, supra,* 596 A.2d at 544 (citing *Early Settlers, supra,* 221 A.2d at 923). When one party settles with the injured party, and the claim proceeds to verdict against the non-settling party, "where contribution would otherwise be called for, a credit is applied against the amount of any judgment ... equal to the share of the judgment that should be borne by the settling tortfeasor." *Lamphier, supra,* 524 A.2d at 733. If the settling defendant is judicially determined to be a joint tortfeasor, the non-settling defendant is entitled to a *pro rata* credit against the verdict. *Berg, supra,* 673 A.2d at 1248 (citing *Martello, supra,* 112 U.S.App. D.C. at 132, 300 F.2d at 724). "When plaintiff has settled with a party whose culpability has not been determined, or with a party whom the finder of fact has found not liable, the court awards the nonsettling defendant a credit against the verdict in the amount of the settlement, dollar-for-dollar (*pro tanto*)." *Id.* 1248–49 (citing *Snowden v. D.C. Transit Sys. Inc.,* 147 U.S.App. D.C. at 205–06, 454 F.2d at 1048–49 (1971)). In either case, the risk of loss is on the injured party who has sold a portion of his or her claim.

ly the shifting of the entire loss from one who has paid it to another who would be unjustly enriched at the indemnitee's expense by the indemnitee's discharge of the obligation. *See R. & G. Orthopedic*, 596 A.2d at 545 (quoting *East Penn*, 578 A.2d at 1128 n. 20 (citation omitted)). Although the right to indemnity may arise by contract, "[w]e have recognized that the obligation to indemnify may be implied in fact (on an implied contract theory) or implied in law in order to achieve an equitable result." *R. & G. Orthopedic*, 596 A.2d at 544 (citing *East Penn*, 578 A.2d at 1126). When based upon equitable principles, indemnity is restricted generally to situations where the indemnitee's conduct was not as blameworthy as that of the indemnitor.[9] *Id.* at 546.

> In "implied in law," or "equitable" indemnity, the obligation is based on variations in the relative degrees of fault of joint tortfeasors, and the assumption that when the parties are not *in pari delicto*, the traditional view that no wrongdoer may recover from another may compel inequitable and harsh results.

*East Penn*, 578 A.2d at 1127 n. 20 (citing RESTATEMENT (SECOND) OF TORTS, *supra*, § 886B comment a (further citations omitted)).

Some courts recognize indemnity as a theory upon which to provide restitution to an initial tortfeasor who has discharged the full liability, including aggravation of the initial injury caused by a subsequent tortfeasor's medical negligence. *See, e.g., New Milford Bd. of Educ., supra*, 530 A.2d at 45; *see generally* 72 A.L.R. 4th 239–245 (1989). Some conceptual difficulties with application of indemnity to this situation have been identified. First, the allowance of indemnity in

such circumstances is contrary to the traditional application of the doctrine which shifts the entire loss rather than just a portion of it. *See Radford–Shelton, supra*, 569 P.2d at 510; *see also New Milford*, 530 A.2d at 45. Second, in cases involving successor tortfeasors, both parties are at fault while the doctrine generally requires that the party seeking indemnity not be at fault. *Id.; Salonia v. Samsol Homes, Inc.*, 119 A.D.2d 394, 507 N.Y.S.2d 186 (1986). To address these issues and provide an equitable remedy in indemnity, courts have used various approaches. Among them is adoption of a doctrine denominated partial indemnity. *Radford–Shelton*, 569 P.2d at 511 (citing *Gertz v. Campbell*, 55 Ill.2d 84, 302 N.E.2d 40 (Ill.1973)). Partial indemnity allows the initial tortfeasor "to recoup that portion of the damages attributable to the conduct of the second tortfeasor." *Mayhew Steel Products, Inc. v. Hirschfelder*, 150 Ill.App.3d 328, 103 Ill.Dec. 587, 501 N.E.2d 904, 906 (Ill.App.1986). The Oklahoma court found it unnecessary to modify the doctrine of indemnity to reach an equitable result. *See Radford–Shelton*, 569 P.2d at 509. Having reviewed decisions granting indemnity against a subsequent medical attendant on the basis of partial indemnity or subrogation and determined them to be more consistent with contribution, the Oklahoma Court of Appeals opted to identify it for what it deemed it to be *i.e.*, contribution. *Id.* In that sense, it preserved the requirement that the party seeking indemnity from another tortfeasor who aggravated the injury be without personal fault. *Radford–Shelton*, 569 P.2d at 511 (citation omitted).

This court in its earlier cases adhered to the proposition that a joint tortfeasor whose active negligence concurs in causing an inju-

---

**9.** Indemnity has been granted to prevent unjust enrichment in the following types of situations:

(a) The indemnitee was liable only vicariously for the conduct of the indemnitor;

(b) The indemnitee acted pursuant to directions of the indemnitor and reasonably believed the directions to be lawful;

(c) The indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he justifiably relied;

(d) The indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both were liable

to the third person, and the indemnitee innocently or negligently failed to discover the defect;

(e) The indemnitor created a dangerous condition of land or chattels as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;

(f) The indemnitor was under a duty to the indemnitee to protect him against the liability to the third person.

RESTATEMENT (SECOND) OF TORTS, *supra*, § 886B (2).

ry may be entitled to contribution, but indemnity is not available. *Early Settlers, supra,* 221 A.2d at 923. More recently, we have indicated that "[a]ggravation of an injury by negligent failure to treat it, resulting in catastrophe, may also trigger the duty to indemnify, where equity and justice so require." *R. & G. Orthopedic Appliances, supra,* 596 A.2d at 547. Such a situation might occur where the initial tortfeasor was responsible for a minor injury, while the subsequent negligent medical attendant was "the effective cause of a major one . . . ." *Id.* at 545. In *R. & G., Orthopedic,* the injured party suffered ulcers on her foot, allegedly caused by the negligence of R. & G., which was subsequently amputated due to the alleged negligence of the hospital which treated her. *Id.* at 543. There was a factual issue as to whether R. & G.'s negligence was responsible for the injured party's ulcerations and whether the hospital's negligence resulted in the need for the radical amputation. *Id.* We concluded that, assuming the hospital's negligence was the cause for the amputation, R. & G. would be entitled to no indemnity up to the point of the hospital's malpractice, but that it would be entitled to indemnity for the difference between the full amount of the damages and the amount of the damages had the hospital not committed malpractice.[10] *Id.* at 547–48 (citing *New Milford Bd. of Educ., supra,* 530 A.2d at 45). However, we further concluded that if R. & G.'s negligence would have resulted in the amputation of the injured party's foot absent the hospital's negligence, *i.e.,* if the negligence of both defendants concurred in causing the amputation, then R. & G. had no claim for indemnity, and the cross-claim for same was properly dismissed. *Id.* Thus, the decision in *R. & G.* continues rejection of indemnity as a remedy available to a tortfeasor whose active negligence concurred in causing an injury. *Id.;* see also *Early Settlers,* 221 A.2d at 923.

The District alleged in its amended complaint against WHC that Ms. Bringier sustained severe personal injuries as a result of the automobile accident. It further alleged that her injuries were exacerbated as a result of WHC's breach of the standard of care as a result of "its failure to diagnose possible narcotic drug withdrawal and oversedation," as a result of which she suffered "respiratory arrest and additional injuries, including, but not limited to, an hypoxic injury to her central nervous system." Assuming, without deciding, that the facts alleged are sufficient to fall within the standard established in *R. & G.* to support an equitable claim of indemnification for aggravation of Ms. Bringier's accident-related injuries,[11] the claim is not viable in this case for other reasons. Contrary to the District's contention, the record establishes that the District neither compensated the injured party for the entire loss nor extinguished the liability of WHC.

■■■■ A prerequisite to an equitable indemnity claim is that the party seeking it (indemnitee) have discharged the liability for the party against whom it is sought (indemnitor). *Cokas, supra,* 252 F.Supp. at 567; RESTATEMENT (SECOND) OF TORTS, *supra,* § 886B (1) & Comment c. "Partial satisfaction taken in compromise and release of liability of one or some wrongdoers does not discharge the others." *McKenna, supra,* 77 U.S.App. D.C. at 234, 134 F.2d at 665. Whether the indemnitee has discharged the liability of the indemnitor turns on (1) "[w]hether the settlement is made and accepted as full satisfaction or merely as the best obtainable compromise for the settler's liability" and (2) whether the release was intended to release only the party named in the release or all others. *Lamphier, supra,* 524 A.2d at 735; *Hill, supra,* 442 A.2d at 138–39 (citations omitted).

■■■■ The District argues that its settlement disposed of all claims as to all parties

---

10. The case was remanded for clarification of factual findings essential to the court's determination provided a new trial which was granted did not render the issue on the cross-claim moot. *R. & G., Orthopedic,* 596 A.2d at 548–49.

11. As we stated in *R. & G., supra,*

We [have] not [held] that every physician who negligently fails to stem the harm done by an injury inflicted by an initial tortfeasor is always required to indemnify the earlier wrongdoer. Indemnity is an equitable doctrine, and each case must turn on its own circumstances. 596 A.2d at 548 n. 23.

and settled the entire liability. However, WHC contends that the District's settlement did not extinguish any claims against WHC nor release WHC from liability to Ms. Bringier. A release is a form of contract, and the rules of contract construction govern its interpretation. *Lamphier, supra,* 524 A.2d at 732. Where the language is clear and unambiguous, its plain language is relied upon in determining the parties' intention. *Id.* Where the terms of the document leave no room for doubt, the effect of the release can be determined as a matter of law. *Id.* at 735 (quoting *Hill, supra,* 442 A.2d at 138–39).

■ The release in the Bringier case is in the form of a consent judgment which was proffered to, and approved, by the trial court to dispose of the Bringier case. The judgment states that "this case ... is dismissed with prejudice as to all parties and claims." Since WHC was not a party to the litigation, the reference to dismissal of all claims as to all parties could not have referred to WHC. The order expressly releases only "the District of Columbia and its officers, agents and employees ...," including any claims for contribution or indemnity which any third party may have against the District. However, the order contains no provision for the Bringiers' release of any other individuals or entities against whom they might have claims. WHC is not mentioned, and the settlement does not purport to release or be for the benefit of the WHC. The language of the document is "facially unambiguous"; therefore, we need look no further to ascertain the parties' intent. *Lamphier, supra,* 524 A.2d at 732. There is no basis in the release to conclude that the Bringiers released any claim that they might have for medical malpractice against the hospital.

■ The District and the parties to the Bringier action also signed a consent motion for consent judgment embodying the terms of their agreement. In this document, the parties explicitly state that the settlement represents "a negotiated compromise," which was fair and reasonable given the substantial questions of fact and law in dispute. Where the settlement represents only the best obtainable compromise, the presumption is against a claim of full satisfaction and discharge of the injured party's rights against other potential tortfeasors. *Lamphier, supra,* 524 A.2d at 735. Since the release did not purport to be for the benefit of WHC and was taken in compromise rather than as full compensation to Ms. Bringier, under the rule in *Lamphier* and *Hill,* the District did not settle and discharge any liability of WHC for which it can recover by way of equitable indemnity. *See id.*

### III.

In light of our disposition of the case, we need not reach the District's argument that the division erred in concluding under the principles in *Hall, supra,* that a defendant who settles pre-trial may not seek contribution from non-settling defendants thereafter.[12] While *Hall* and other cases in this jurisdiction lend support to the division majority's holding,[13] other cases in this jurisdiction suggest that such claims may be pursued by a defendant who settles pre-trial.[14] Most states ordinarily prohibit a settling defendant from seeking contribution, often by statute.[15] *See McDermott, Inc. v. AmClyde,* 511 U.S. 202, 211 n. 13, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994); *see also Berg, supra,* 673 A.2d at

---

12. In *Hall,* we upheld the dismissal of cross-claims filed by co-defendants against each other where both had settled independently with the plaintiff before trial. 621 A.2d at 849. The reason for the holding was that a prerequisite to a contribution claim is a finding of joint liability, which was precluded by the parties' settlements which extinguished the claims and any potential liability. *Id.* at 850. Of course, any broad language in *Hall* should be read in the context of its peculiar fact situation of dual settlements. *See, e.g., Armour & Co. v. Wantock,* 323 U.S. 126, 132–33, 65 S.Ct. 165, 89 L.Ed. 118 (1944) (words of opinions are to be read in light of facts).

13. *See, e.g., Rose v. Associated Anesthesiologists,* 163 U.S.App. D.C. 246, 501 F.2d 806 (1974); *Martello, supra,* 112 U.S.App. D.C. 129, 300 F.2d 721.

14. *See, e.g., Early Settlers, supra,* 221 A.2d 920; *see also Taylor v. Tellez,* 610 A.2d 252 (D.C.1992).

15. For a discussion of the issue *see* Jean Macchiaroli Eggen, *Understanding State Contribution Laws and Their Effect on the Settlement of Mass Tort Actions,* 73 Texas Law Review, 1701 (1995).

1253 & n. 17 (recognizing that most jurisdictions bar contribution to a settling defendant who settles for more than his proportionate share of damages). While recognizing the desirability of eventually resolving definitively this question, we adhere to the principle of leaving unresolved an issue not necessary to the disposition of the case.

For the foregoing reasons, the judgment appealed from hereby is

*Affirmed.*